PAUL D.S. EDWARDS,
713 Wheat Ridge Lane, Unit 203,
Las Vegas, Nevada 89145
Landline Telephone:  702.341.1776
Cellular Telephone:  702.893.1776
Email: pauldse@pauldsedwards.com
Plaintiff *pro se*

```
_____ FILED        _____ RECEIVED
_____ ENTERED      _____ SERVED ON
        COUNSEL/PARTIES OF RECORD

        JAN 20 2022

    CLERK US DISTRICT COURT
       DISTRICT OF NEVADA
BY: _____ DEPUTY
```

# UNITED STATE DISTRICT COURT,

## DISTRICT OF NEVADA

PAUL D.S. EDWARDS,

**Plaintiff,**

*vs.*

SIGNIFY HEALTH, INC.,
and CURE TOPCO, LLC,
a/k/a CENSEO HEALTH, a/k/a CENSEOHEALTH,
a/d/b/a SIGNIFY HEALTH, LLC,
a/d/b/a SIGNIFY HEALTH MEDICAL
    ASSOCIATES, PLLC,
a/d/b/a SIGNIFY HEALTH MEDICAL
    ASSOCIATES OF CALIFORNIA, P.C.,
a/d/b/a CENSEO HEALTH, LLC,
a/d/b/a CURE INTERMEDIATE 3, LLC,
a/d/b/a CHLOE OX INTERMEDIATE 3, LLC,
f/k/a CHLOE OX PARENT, LLC,
f/k/a CURE BORROWER, LLC,
and BRADFORD KYLE ARMBRESTER,
a/k/a KYLE ARMBRESTER,
and STEVEN SENNEFF,
and DAVID PIERRE,
and DOE INDIVIDUALS F-X,
and ROE CORPORATIONS XI-XX, ET AL.

**Defendants.**

**CASE NO.:**  **2:22-cv-00095-BNW**

**COMPLAINT FOR DAMAGES,
STATUTORY INJUNCTIVE RELIEF,
AND,
TRIAL BY JURY**

## I.

## INTRODUCTION

1.      This is an action for statutory damages, punitive damages, exemplary damages, and injunctive relief brought by an individual consumer for Defendants' illegal acts, including, but not limited to illegal, unsolicited telemarketing and solicitation telephone calls in violation of, but not limited to the following—

    **(i)**     Telephone Consumer Protection Act of 1991, Public Law 102-243, December 20, 1991, which amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 et seq., by adding a new section, 47 U.S.C. § 227 et seq. (**"TCPA"**), as amended; Title 47-Telecommunication Chapter I-Federal Communications Commission Part 64-Miscellaneous Rules Relating to Common Carriers-Subpart L-Restrictions on Telephone Solicitation Sec. 64.1200,[1] Delivery Restrictions (**"Delivery Restrictions"**) as amended; The Communications Act of 1934, 47 U.S.C. § 151, et seq.(**"TCA"**), as amended; and the Telephone Sales Rule, 16 C.F.R. Part 310 (**"TSR"**) as amended;

    **(ii)**    Nevada Revised Statutes ("NRS"), including, but not limited to 598.0918(2) & (3), 598.0923(3), 598.0977, 599B.300, as amended; and,

    **(iii)**   Defendants intentional invasion into Plaintiff's expectation of privacy and intrusion into the solitude and seclusion expected by Plaintiff in his home.

2.      Plaintiff PAUL D.S. EDWARDS, *pro se* (**"Plaintiff"**), asserts, alleges, and maintains that the above violations were perpetrated (either individually, or in concert with others, and either directly or indirectly) by Defendants SIGNIFY HEALTH, INC., and CURE TOPCO, LLC, a/k/a CENSEO HEALTH, a/k/a CENSEOHEALTH, a/d/b/a SIGNIFY HEALTH, LLC, a/d/b/a SIGNIFY HEALTH MEDICAL ASSOCIATES, PLLC, a/d/b/a SIGNIFY HEALTH MEDICAL ASSOCIATES OF CALIFORNIA, P.C., a/d/b/a CENSEO HEALTH, LLC, a/d/b/a CURE INTERMEDIATE 3, LLC, a/d/b/a CHLOE OX INTERMEDIATE 3, LLC, f/k/a CHLOE OX PARENT, LLC, f/k/a CURE BORROWER, LLC, and BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER, and STEVEN SENNEFF, and DAVID PIERRE, and DOE INDIVIDUALS F-X, and ROE CORPORATIONS XI-XX, ET AL. (**collectively "Defendants"**)— with total disregard for the rights of the Plaintiff, that are protected under Nevada state and federal laws, Rules, and regulations.

---

[1] See 47 C.F.R. 64.1200 (a)(1) & (2); (b)(1) & (2); (c)(2); f (2) & (3); and (d)(1).

**3.**      That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendants (either individually, or in concert with others, and either directly, or indirectly) knowingly, willfully, and willingly participated in, was complicit in, authorized, directed, controlled, acted together, and engaged in each and every *illegal act* complained of herein.

**4.**      That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that (either individually, or in concert with [each] other, and either directly, or indirectly), each Defendant, above-named, [either] collaborated, participated in, was complicit in, authorized, directed, controlled, acted together, and were the causation of, and engaged, and cooperated in each and *every illegal act* complained of herein, including, but not limited to the generation of unsolicited, *illegal, and harassing telemarketing and solicitation telephone calls* to Plaintiff's residential (landline) telephone number (702.341.1776)— totally ignoring and disrespecting the rights and privacy of the Plaintiff, and [completely] refusing to comply with a number of Nevada state laws, and various federal laws and regulations.

**5.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly) the above-named Defendants knowingly, willfully, and willingly *invaded, or and was the causation of the invasion into Plaintiff's expectation of privacy, solitude, and seclusion, expected by Plaintiff in his home,* by (either individually, or in concert with others, and either directly, or indirectly) causing *unsolicited, illegal, and deceptive telemarketing and solicitation telephone calls* to Plaintiff's residential telephone number— absent any [prior] authorization, or consent by Plaintiff, to cause such calls to Plaintiff's residential telephone number (702.341.1776).

. . .

. . .

. . .

## II.

## JURISDICTION AND VENUE

**6.**     Jurisdiction of this Court is attained pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, as amended, the FCC's implementing rules,[2] and the Federal Rules of Civil Procedure, 28 U.S.C. § 1331. See *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012).

**7.**     Venue is proper in the above-titled court because Defendants, and each of them, at all times relevant and material herein, transacted, and continues to transact business within the city of Las Vegas, the county of Clark, and the state of Nevada, and the conduct complained of herein occurred within one (1) or more of those venues.

**8.**     That injunctive relief is statutorily provided pursuant to 47 USC 227(c)(5), wherein Plaintiff is entitled to (statutory) injunctive relief.

## III.

## <u>PARTIES</u>

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through eight as aforementioned.

**9.**     **<u>PLAINTIFF:</u>**

**(i)**     That at all times relevant and material herein, Plaintiff PAUL D.S. EDWARDS was, and continues to be a natural person who resides in Las Vegas, Clark County, Nevada.

**(ii)**     That at all times relevant and material herein, Plaintiff PAUL D.S. EDWARDS was, and continues to be a natural person who resides in Las Vegas, Clark County, Nevada, and is a "person" within the meaning of 18 U.S.C. § 1961(3), and TCA, 47 U.S.C. § 153(32).

**(iii)**     That at all times relevant and material herein, Plaintiff PAUL D.S. EDWARDS is a "person" pursuant to the TCA, Title I, Sec. 3(i).

---

[2]47 C.F.R. Part 64 Subpart 1200 and Part 68 Subpart 318.

1   **10.   DEFENDANTS:**

2       Through several acquisitions, mergers, reorganizations, stock options and

3   manipulations, shell entities, and Initial Public Offerings (**"IPO"**), Signify Health, Inc. was formed

4   and incorporated in the state of Delaware on October 1, 2020. It appears that Defendant SIGNIFY

5   HEALTH, INC. was formed for the purpose of completing an IPO of its common stock, and related

6   reorganizational transactions. As a result of the reorganizational transactions in February 2021,

7   Defendant SIGNIFY HEALTH, INC. controlled, and therefore consolidated the operations of

8   [Defendants] CURE TOPCO, LLC (**"CURETOP"**), and it's direct and indirect subsidiaries that

9   included, but was not limited to [Defendant] SIGNIFY HEALTH, LLC (**"SIGNIFY LLC"**).

10      Defendant CURETOP is a Delaware Limited Liability Company formed on November 3,

11  2017. Defendant CURETOP had adopted a holding company structure, and is the indirect parent

12  company of [Defendant] SIGNIFY LLC, a Delaware limited liability company. Defendant SIGNIFY

13  LLC was formed on November 3, 2017. Operations are performed through Defendant CURETOP's

14  wholly-owned subsidiaries.

15      Albeit Defendant SIGNIFY has no filings under SIGNIFY HEALTH, INC., its subsidiary

16  SIGNIFY HEALTH, LLC has filings with the Nevada Secretary of State's Office, therefore, all

17  claims against Defendants SIGNIFY HEALTH, INC., and CURE TOPCO, LLC, a/d/b/a SIGNIFY

18  HEALTH, LLC, f/k/a CHLOE OX PARENT, LLC, f/k/a CURE BORROWER, LLC, a/d/b/a

19  SIGNIFY HEALTH MEDICAL ASSOCIATES, PLLC, a/d/b/a SIGNIFY HEALTH MEDICAL

20  ASSOCIATES OF CALIFORNIA, P.C., a/d/b/a CENSEO HEALTH, LLC, a/k/a CENSEO

21  HEALTH, a/k/a CENSEOHEALTH, a/d/b/a CURE INTERMEDIATE 3, LLC, a/d/b/a CHLOE OX

22  INTERMEDIATE 3, LLC, will be consolidated under Defendant SIGNIFY HEALTH, LLC.[3]

23  ─────────────────

24  [3]Defendant SIGNIFY HEALTH MEDICAL ASSOCIATES, PLLC (**"SIGNIFY PLLC"**) is
    incorporated in the state of Nevada, as a Foreign Limited Liability Company, and that JOSEPH

25  JASSER is the Manager of, by, and for Defendant SIGNIFY PLLC. Moreover, Defendant SIGNIFY
    PLLC holds itself out as having the principal office address of 1999 Bryan Street, Suite 900, Dallas,

26  TX 75201, and a mailing address of 4055 Valley View Lane, Suite 400, Dallas, TX 75244.

27  (continued...)

28  **-5-**

1    To clarify, through in-depth discovery, Plaintiff will expose the relationships between each

2  subsidiary and shell entity(ies) under Defendant SIGNIFY'S umbrella.

3    **1.    SIGNIFY HEALTH, LLC**

4        **(i)**    That at all times relevant and material herein, Plaintiff asserts, alleges,

5  and maintains that— since October 4, 2018, Defendant SIGNIFY HEALTH, LLC **("SIGNIFY**

6  **LLC")** was, and continues to be incorporated in the state of Nevada, as a Foreign Limited Liability

7  Company.

8        **(ii)**    That at all times relevant and material herein, Plaintiff asserts, alleges,

9  and maintains that— since November 3, 2017, Defendant SIGNIFY LLC, was, and continues to be

10  domiciliary incorporated in the state of Deleware, as a Limited Liability Company.

11        **(iii)**    That at all times relevant and material herein, Plaintiff asserts, alleges,

12  and maintains that Defendant SIGNIFY LLC holds itself out as having its principal place of business

13  located at 4055 Valley View Lane, Suite 700, Dallas, TX 75244.

14        **(iv)**    That at all times relevant and material herein, Plaintiff asserts, alleges,

15  and maintains that— pursuant to the filings with the Nevada Secretary of States Office, Defendant

16  CURE INTERMEDIATE 3, LLC **("CURE 3")**[4] is the Officer/Member of, by, and for Defendant

17  SIGNIFY LLC.

18  . . .

19   . . .

20

21        [3](...continued)

22  In addition, Defendant CENSEO HEALTH, LLC, a/k/a CENSEO HEALTH, LLC. a/k/a
CENSEOHEALTH, LLC **("CENSEO LLC")** is incorporated in the state of Nevada, as a Foreign

23  Limited Liability Company. That, on August 2, 2019, pursuant to Section 171.309 of the Texas Tax
Code, the Secretary of State forfeited the charter, certificate, or registration of the taxable entity

24  [Defendant] CENSEO LLC. That, on or about June 2021, Defendant CENSEO LLC was reinstated,
by the Secretary of State in Texas, as a Foreign Limited Liability Company.

25  Defendants SIGNIFY PLLC and CENSEO LLC are associated with Defendant SIGNIFY LLC, and
under Defendant SIGNIFY'S corporate umbrella.

26
    [4]Defendants BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER holds himself out

27  as President and Chief Executive Officer of, by, and for Defendant CURE 3.

28                                      **-6-**

**(v)**       That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant SIGNIFY LLC holds itself out as a company that, in pertinent part, provides in-home healthcare services.

**(vi)**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant SIGNIFY LLC holds itself out as a leading healthcare platform that leverages advanced analytics, technology, and nationwide healthcare provider networks to create and power value-based payment programs.

**(vii)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant SIGNIFY LLC boasts that its customers include health plans, governments, employers, health systems, and physician groups.

**(viii)**    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant SIGNIFY LLC boasts that— Our proprietary, cloud-based technology platform, which was purpose-built for advanced targeting and analytics, predictive models to deploy a multimodal approach to identifying and engaging individuals who may benefit from our services. **We deploy** email, SMS text messages, **telephone outreach and digital-marketing campaigns to help us effectively engage individuals across the numerous value-based payment programs we support**.

**(ix)**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that **Defendant SIGNIFY LLC maintain that it is subject to a variety of federal and state laws** that regulate telecommunications and telemarketing activities, **including the TCPA, that places restrictions on making certain telemarketing calls**, faxes, and SMS text messages **to consumers**.

**(x)**       That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that **Defendant SIGNIFY LLC acknowledges that prior express consent of consumers are required to override certain activities prohibited under the TCPA**.

. . .

. . .

-7-

**(xi)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— **no above-named Defendant, nor Defendant SIGNIFY LLC, has applied for, nor has received any type of license, business or otherwise, permitting any above-named Defendant, including Defendant SIGNIFY LLC**, to conduct any type of business activities within the City of Las Vegas, the County of Clark, or the State of Nevada.

**(xii)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— one or more of the above-named Defendants, including **Defendant SIGNIFY LLC has, and continues to conduct unsolicited, illegal, and deceptive business activities within the City of Las Vegas, the County of Clark, and the State of Nevada**.

**(xiii)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant SIGNIFY LLC markets its unauthorized and illegal business activities, in pertinent part by placing, through Defendant SIGNIFY LLC's employees, agents, and third-party entities— *unsolicited, illegal, and harassing telemarketing and solicitation telephone calls*, such as those complained of herein.

**(xiv)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant SIGNIFY LLC, with the assistance of its owners, officers, directors, managers, members, employees, sales associates, representatives, agents, independent contractors, and telemarketing services— engages in placing, or causing the placing of *unsolicited and illegal telemarketing and solicitation telephone calls,* to contact individuals such as Plaintiff, for the sole purpose of inducing the called party [such as Plaintiff] to utilize its products or services.

**(xv)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant SIGNIFY LLC, with the assistance of its owners, officers, directors, managers, members, employees, sales associates, representatives, agents, independent contractors, and telemarketing services— markets its services by telemarketing to consumers without the consumers consent, and even if their telephone numbers are on the National Do-Not-Call Registry.

1   **(xvi)** That at all times relevant and material herein, Plaintiff asserts, alleges,

2   and maintains that (either individually, or in concert with each other, and either directly, or

3   indirectly) Defendant SIGNIFY LLC employs and utilizes employees, agents, representatives, and

4   one or more independent telemarketing entities to place, or cause to be placed, *unsolicited and illegal*

5   *telemarketing and solicitation telephone calls*, such as those received by Plaintiff on his residential

6   telephone **("landline/wired")** ***without first obtaining the prior express written consent***[5] from

7   Plaintiff, as alleged herein.

8   **(xvii)** That at all times relevant and material herein, Plaintiff asserts, alleges,

9   and maintains that Plaintiff **never provided** Defendant SIGNIFY LLC, or any other Defendants

10   herein named, with Plaintiff's residential telephone number (702.341.1776), or his cellular telephone

11   number (702.893.1776).

12   **(xviii)** That at all times relevant and material herein, Plaintiff asserts, alleges,

13   and maintains that **Plaintiff never contacted** Defendant SIGNIFY LLC, or any other Defendants

14   herein named regarding Defendants products and services.

15   . . .

16   . . .

17   _____

18   [5]*Effective October 16, 2013*, "prior express written consent" will mean an agreement, in writing,
     bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be

19   delivered to the person called the telephone number to which the signatory authorizes such
     advertisements or telemarketing messages to be delivered.

20   **The written agreement** shall include a clear and conspicuous disclosure informing the person

21   signing that: **(i)** By executing the agreement, such person authorizes the seller to deliver or cause to
     be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an

22   artificial or prerecorded voice; and **(ii)** The person is not required to sign the agreement (directly or
     indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods

23   or services. Finally, the definition notes that "the term 'signature' shall include an electronic or
     digital form of signature, to the extent that such form of signature is recognized as a valid signature

24   under applicable federal law or state contract law. See, *In the Matter of Rules and Regulations*

25   *Implementing the Telephone Consumer Protection Act of 1991*, FCC Report and Order, CG Docket
     No. 02-278, ¶ 68 (Feb. 15, 2012) ("2012 Report and Order")("Once our written consent rules become

26   effective, however, an entity will no longer be able to rely on non-written forms of express consent
     to make autodialed or prerecorded voice telemarketing calls, and thus could be liable for making such

27   calls absent prior written consent.

28

1      (**xix**)    That at all times relevant and material herein, Plaintiff asserts, alleges,

2    and maintains that **Plaintiff never requested** any products or services by, for, or on behalf of

3    Defendant SIGNIFY LLC, or any other Defendant herein named.

4      (**xx**)    That at all times relevant and material herein, Plaintiff asserts, alleges,

5    and maintains that (either individually, or in concert with each other, and either directly, or

6    indirectly), Defendant SIGNIFY LLC, by, through, and at the direction and approval of its Owners,

7    Officers, Directors, Managers, and Members were the causation of *numerous unsolicited and illegal*

8    *telemarketing and solicitation telephone calls* to Plaintiff's residential telephone number

9    (702.341.1776), subsequent to Plaintiff placing his telephone numbers on the National DO-NOT-

10    CALL Registry.[6]

11      (**xxi**)    That at all times relevant and material herein, Plaintiff asserts, alleges,

12    and maintains that (either individually, or in concert with each other, and either directly, or

13    indirectly), Defendant SIGNIFY LLC, by, through, and at the direction and approval of its Owners,

14    Officers, Directors, Managers, and Members authorized, directed, and was the causation of *multiple*

15    *unsolicited, illegal telemarketing and solicitation telephone calls* to Plaintiff's residential telephone

16    number (702.341.1776), ***without first obtaining Plaintiff's prior express consent*** (written or

17    otherwise) to call or contact Plaintiff.

18      (**xxii**)    That at all times relevant and material herein, Plaintiff asserts, alleges,

19    and maintains that (either individually, or in concert with each other, and either directly, or

20    indirectly), Defendant SIGNIFY LLC, with the assistance of, and in complicity and collaboration

21    with each Defendant herein named, earned, and continues to earn hundreds-of-thousands of dollars

22    by authorizing, directing, and causing *unsolicited and illegal telemarketing and solicitation*

23    *telephone calls* to residential telephone numbers [such as Plaintiff's telephone number] that were

24    placed on the National DO-NOT-CALL Registry, and without [first] obtaining the mandated

25    written/oral consent from the called party(ies).

26

27    [6]Plaintiff's telephone numbers (702.341.1776 and 702.893.1776) has been on the National Do-Not-Call Registry since its inception in June 2003.

28                  **-10-**

**(xxiii)**  That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly), Defendant SIGNIFY LLC, by and through its Owners, Officers, Directors, Managers, and Members— authorized, directed, engaged in, or caused to be engaged in *numerous unsolicited and illegal telemarketing and solicitations telephone calls* to Plaintiff's residential telephone number (702.341.1776), albeit each of Plaintiff's telephone numbers had been on the National Do-Not-Call Registry, established and maintained by the Federal Trade Commission **("FTC")** under 16 C.F.R. § 310.

**(xxiv)**  That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant SIGNIFY LLC, completely failed to maintain compliance, confirm compliance, and persist compliance with the Federal Trade Commission's Telemarketing Sales Rule, 16 C.F.R. 310.4(b), that states, in pertinent part—

> ...It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:
>
> (iii) **Initiating any outbound telephone call to a person when**:
>
> > (A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; or
> >
> > (B) That person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services unless the seller or telemarketer:
> >
> > > (1) Can demonstrate that the seller has obtained the express agreement, in writing, of such person to place calls to that person...;
> > >
> > > \*       \*       \*
> > >
> > > (2) Can demonstrate that the seller has an established business relationship with such person...;

1          (iv) **Abandoning any outbound telephone call**. An outbound
telephone call is "abandoned" under this section if a person answers
2          it and the telemarketer does not connect the call to a sales
representative within two (2) seconds of the person's completed
3          greeting.

4          **(xxv)** That at all times relevant and material herein, Plaintiff asserts, alleges,

5 and maintains that (either individually, or in concert with others, and either directly, or indirectly)

6 Defendant SIGNIFY LLC, does not assure the "scrubbing"[7] of telephone numbers that have been

7 entered into the National DO-NOT-CALL Registry database, such as Plaintiff's telephone numbers.

8          **(xxvi)** That at all times relevant and material herein, Plaintiff asserts, alleges,

9 and maintains that (either individually, or in concert with others, and either directly, or indirectly)

10 Defendant SIGNIFY LLC holds itself out as operating throughout the United States, in both urban

11 and rural locations, and retains the services, under contract with Defendants, of thousands of highly

12 skilled medical professionals, who are deployed to an individual's home that have been contacted

13 through the unsolicited, illegal telemarketing practices of Defendants.

14          **(xxvii)** That at all times relevant and material herein, Plaintiff asserts, alleges,

15 and maintains that Defendant SIGNIFY LLC, earns hundreds-of-thousands of dollars through the

16 utilization of unsolicited and *illegal telemarketing and solicitation telephone calls* within the State

17 of Nevada, without [first] obtaining the mandated written consent of the called party[ies].

18 _____

19 [7]Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Federal
Communications Commission DA 08-1649, ANNUAL REPORT ON THE NATIONAL DO-NOT-
20 CALL REGISTRY—

21      The FCC and FTC jointly implemented the Do-Not-Call Registry.*8 The
22      FTC received funding to set up and administer the Do-Not-Call Registry,
while both the FCC and FTC are responsible for enforcement of the do-not-
23      call rules, along with the states. Telemarketers are required to pay fees to
access the database and to "scrub" their calling lists of the telephone numbers
24      in the Registry database. *10. Pge. 2, #4. (notation *9 omitted).

25 Also see, 47 C.F.R. § 64.1200 et seq. and 16 C.F.R. Part 310. Pge. 2, *n.8*; "Scrubbing" refers to
26 comparing a do-not-call list to a company's call list and eliminating from the company call list the
telephone numbers of consumers who have registered a desire not to be called. Telemarketers are
27 required to access the registry and scrub their call lists every . See Rules and Regulations
Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Order, 19
28 FCC Rcd 19215 (2004). Pge. 2*, n.10*.

2.    **BRADFORD KYLE ARMBRESTER,**
**a/k/a KYLE ARMBRESTER**

(i)    Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER **("ARMBRESTER")**, a natural person, holds himself out as, in the past, and is presently, the President and Chief Executive Officer of numerous different companies, including, but not limited to the following—

> Censeo Health, LLC, Chloe Ox Holdings, LLC, **Cure TopCo, LLC**, Liberty Health, LLC, Liberty Health Partners, LLC, Remedy BPCI Partners, LLC, Remedy Holdings, LLC, Remedy Partners, LLC, Signify Episode Administrators, LLC, **Signify Health, Inc.**, Signify Health IPA, LLC, **Signify Health, LLC**, Signify Home & Community Care, LLC, Signify IPA NY, LLC

(ii)    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that, through several mergers, consolidations, IPOs, and related reorganizational transactions, Defendant ARMBRESTER, a natural person, holds himself out as the President, Chief Executive Officer, and a Director of, by, and for Defendant SIGNIFY LLC.[8]

(iii)    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that, through several mergers, consolidations, IPOs, and related reorganizational transactions, Defendant ARMBRESTER, a natural person, holds himself out as a Director, Manager, and Member of, by, and for Defendant CHLOE OX INTERMEDIATE 3, LLC,[9] 787 Seventh Avenue, 49th Floor, New York. NY 10019.

. . .

. . .

---

[8]THIRD AMENDMENT TO CREDIT AGREEMENT, dated December 9, 2019, by and among Cure Intermediate 3, LLC (f/k/a Chloe Ox Intermediate 3, LLC), a Delaware limited liability company ("Holdings"), Cure Borrower, LLC (f/k/a Signify Health, LLC), a Delaware limited liability company (the "Borrower"), the other Guarantors party hereto, the lenders party hereto (the "2019 Incremental Revolving Credit Lenders") and UBS AG, Stamford Branch, as administrative agent and collateral agent (the "Administrative Agent").

[9]Pursuant to filings with the Nevada Secretary of State office, Defendant CHLOE OX INTERMEDIATE 3, LLC holds itself out as a Director, Officer, or Member of, by, and for Defendant SIGNIFY LLC.

**(iv)** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant ARMBRESTER, in his capacity as President, Chief Executive Officer, and a Director of, by, and for Defendant SIGNIFY LLC, oversees, and provides leadership, direction, and guidance for all of the daily business activities of, by, for and on behalf of Defendant SIGNIFY LLC, *including, but not limited to,* Defendant SIGNIFY LLC's daily business and marketing strategies and schemes, *including, but not limited to* numerous variations of telemarketing and telephone solicitation campaigns— such as those complained of herein.

**(v)** That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant ARMBRESTER, in his capacity as President, Chief Executive Officer, and a Director of, by, and for Defendant SIGNIFY LLC, formulates, directs, controls, has the authority to control, and participates in the everyday business acts, practices, and activities of, by, and for Defendant SIGNIFY LLC— including, *but not limited to*, the planning, authorizing, and organizing the utilization of Defendant SIGNIFY LLC's *telemarketing and solicitation campaigns* complained of herein.

**(vi)** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant ARMBRESTER, in his capacity as President, Chief Executive Officer, and a Director of, by, and for Defendant SIGNIFY LLC, directed, managed, instructed, controlled, collaborated, and engaged in direct participation with the planning, authorizing, and organizing the utilization of Defendant SIGNIFY LLC's *telemarketing and solicitation campaigns— including, but not limited to* the preparation, approval, and collaboration of *all written material* utilized in each *unsolicited and illegal telemarketing and solicitation telephone call* complained of herein.

. . .

. . .

. . .

**(vii)**	That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant ARMBRESTER, in his capacity as President, Chief Executive Officer, and a Director of, by, and for Defendant SIGNIFY LLC, oversees and provides leadership, direction, and guidance for all the daily business activities of, by, for and on behalf of Defendant SIGNIFY LLC, *including, but not limited to* the purchasing or subscription to numerous telephone lists, databases, and platforms that contain tens-of-thousands of telephone numbers currently [listed] on the National DO-NOT-CALL Registry.

**(viii)**	That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant ARMBRESTER, in his capacity as President, Chief Executive Officer, and a Director of, by, and for Defendant SIGNIFY LLC, completely failed to maintain compliance, confirm compliance, and persist compliance with the Federal Trade Commission's Telemarketing Sales Rule, 16 C.F.R. 310.4(b). Id.

**(ix)**	That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant ARMBRESTER, in his capacity as President, Chief Executive Officer, and a Director of, by, and for Defendant SIGNIFY LLC, does not assure the "scrubbing" of telephone numbers that have been entered into the National DO-NOT-CALL Registry database, such as Plaintiff's telephone numbers.

**(x).**	That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant ARMBRESTER, in his capacity as President, Chief Executive Officer, and a Director of, by, and for Defendant SIGNIFY LLC, earns, has previously earned, and continues to earn hundreds-of-thousands of dollars by planning, authorizing, and organizing the utilization *telemarketing and solicitation telephone calls* within the City of Las Vegas, the County of Clark, and the State of Nevada, without [first] obtaining the mandated written consent of the called party[ies].

### 3.   STEVEN SENNEFF

  **(i)**  That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that, through several mergers, consolidations, IPOs, and related reorganizational transactions, Defendant STEVEN SENNEFF **("SENNEFF")**,[10] a natural person, holds himself out as President, Chief Financial and Administrative Officer, Manager, and Member of, by, and for Defendant SIGNIFY LLC.

  **(ii)**  That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that, through several mergers, consolidations, IPOs, and related reorganizational transactions, Defendant SENNEFF, in addition to his positions as President, Chief Financial and Administrative Officer, Manager, and Member of, by, and for Defendant SIGNIFY LLC, Defendant SENNEFF also continues to hold his position as Chief Financial Officer at Remedy Partners.

  **(iii)**  That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant SENNEFF, in his capacity as President, Chief Financial and Administrative Officer, Manager, and Member of, by, and for Defendant SIGNIFY LLC, [and] in conjunction with Defendant ARMBRESTER, [also] oversees and provides leadership, direction, and guidance for all of the daily business activities of, by, for and on behalf of Defendant SIGNIFY LLC, *including, but not limited to,* Defendant SIGNIFY LLC's daily business and marketing strategies and schemes, *including, but not limited to* numerous variations of telemarketing and telephone solicitation campaigns— such as those authorized and targeted at Plaintiff.

. . .

. . .

. . .

---

[10]Defendant SENNEFF previously served as the President and Chief Financial Officer of Remedy Partners. However, in 2019, through a series of transactions culminating on November 26, 2019, Defendant SIGNIFY INC acquired 100% of the outstanding equity of Remedy Partners, integrating Remedy Partners into Defendant SIGNIFY INC operations. Defendant SENNEFF retained his position subsequent to the acquisition of Remedy Partners by Defendant SIGNIFY INC.

1      **(iv)**     That at all times relevant and material herein, Plaintiff asserts, alleges

2 and maintains that (either individually, or in concert with others, and either directly, or indirectly)

3 Defendant SENNEFF, in his capacity as President, Chief Financial and Administrative Officer,

4 Manager, and Member of, by, and for Defendant SIGNIFY LLC, [and] in conjunction with

5 Defendant ARMBRESTER, [also] formulates, directs, controls, has the authority to control, and

6 participates in the everyday business acts, practices, and activities of, by, and for Defendant

7 SIGNIFY LLC— including, *but not limited to*, the planning, authorizing, and organizing the

8 utilization of Defendant SIGNIFY LLC's *telemarketing and solicitation campaigns* complained of

9 herein.

10      **(v)**     That at all times relevant and material herein, Plaintiff asserts, alleges,

11 and maintains that (either individually, or in concert with others, and either directly, or indirectly)

12 Defendant SENNEFF, in his capacity as President, Chief Financial and Administrative Officer,

13 Manager, and Member of, by, and for Defendant SIGNIFY LLC, [and] in conjunction with

14 Defendant ARMBRESTER, [also] directs, manages, instructs, controls, collaborates, and engages

15 in direct participation with the planning, authorizing, and organizing the utilization of Defendant

16 SIGNIFY LLC's *telemarketing and solicitation campaigns— including, but not limited to* the

17 preparation, approval, and collaboration of *all written material* utilized in each *unsolicited and*

18 *illegal telemarketing and solicitation telephone call* complained of herein.

19      **(vi)**     That at all times relevant and material herein, Plaintiff asserts, alleges,

20 and maintains that (either individually, or in concert with others, and either directly, or indirectly)

21 Defendant SENNEFF, in his capacity as President, Chief Financial and Administrative Officer,

22 Manager, and Member of, by, and for Defendant SIGNIFY LLC, [and] in conjunction with

23 Defendant ARMBRESTER, [also] oversees and provides leadership, direction, and guidance for all

24 the daily business activities of, by, for and on behalf of Defendant SIGNIFY LLC, *including, but not*

25 *limited to* the purchasing or subscription to numerous telephone lists, databases, and platforms that

26 contain tens-of-thousands of telephone numbers currently [listed] on the National DO-NOT-CALL

27 Registry.

28                                            **-17-**

**(vii)**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant SENNEFF, in his capacity as President, Chief Financial and Administrative Officer, Manager, and Member of, by, and for Defendant SIGNIFY LLC, [also] completely failed to maintain compliance, confirm compliance, and persist compliance with the Federal Trade Commission's Telemarketing Sales Rule, 16 C.F.R. 310.4(b). Id.

**(viii)**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant SENNEFF, in his capacity as President, Chief Financial and Administrative Officer, Manager, and Member of, by, and for Defendant SIGNIFY LLC, [also] failed to assure the "scrubbing" of telephone numbers that have been entered into the National DO-NOT-CALL Registry database, such as Plaintiff's telephone numbers.

**(ix).**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant SENNEFF, in his capacity as President, Chief Financial and Administrative Officer, Manager, and Member of, by, and for Defendant SIGNIFY LLC, earns, has previously earned, and continues to earn hundreds-of-thousands of dollars by engaging in the planning, authorizing, and organizing the utilization of unsolicited, *illegal, and harassing telemarketing and solicitation telephone calls* within the City of Las Vegas, the County of Clark, and the State of Nevada, without [first] obtaining the mandated written consent of the called party[ies].

    **4.      DAVID PIERRE**

**(i)**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that, through several mergers, consolidations, IPOs, and related reorganizational transactions, Defendant DAVID PIERRE **("PIERRE")**, a natural person, holds himself out as Chief Operating Officer of, by, and for Defendant SIGNIFY LLC.

**(ii)**    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that, prior to his role as Chief Operating Officer of, by, and for Defendant SIGNIFY LLC, Defendant PIERRE served as Chief Operating Officer of, by, and for Advance Health, until Advance Health' sale and merger, which was involved in the forming of Defendant SIGNIFY HEALTH.

**(iii)**    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant PIERRE, in his capacity as Chief Operating Officer of, by, and for Defendant SIGNIFY LLC, [and] in conjunction with Defendant ARMBRESTER and Defendant SENNEFF, [also] oversees and provides leadership, direction, and guidance for all of the daily business activities of, by, for and on behalf of Defendant SIGNIFY LLC, *including, but not limited to,* Defendant SIGNIFY LLC's daily business and marketing strategies and schemes, *including, but not limited to* numerous variations of telemarketing and telephone solicitation campaigns— such as those authorized and targeted at Plaintiff.

**(iv)**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that— as Chief Operating Officer of, by, for, and on behalf of Defendant SIGNIFY LLC, Defendant PIERRE is [also] tasked with overseeing the day-to-day administrative and operational functions of Defendant SIGNIFY LLC.

**(v)**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that— as Chief Operating Officer of, by, for, and on behalf of Defendant SIGNIFY LLC, Defendant PIERRE is [also] the member of executive management, and is, in pertinent part of his position, responsible for maintaining and driving operational results within Defendant SIGNIFY LLC.

**(vi)**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant PIERRE, in his capacity as Chief Operating Officer of, by, and for Defendant SIGNIFY LLC, [and] in conjunction with Defendant ARMBRESTER and Defendant SENNEFF, [also] formulates, directs, controls, has the authority to control, and participates in the everyday business

-19-

acts, practices, and activities of, by, and for Defendant SIGNIFY LLC— including, *but not limited to*, the planning, authorizing, and organizing the utilization of Defendant SIGNIFY LLC's *telemarketing and solicitation campaigns* complained of herein.

**(vii)**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant PIERRE, in his capacity as Chief Operating Officer of, by, and for Defendant SIGNIFY LLC, [and] in conjunction with Defendant ARMBRESTER and Defendant SENNEFF, [also] directs, manages, instructs, controls, collaborates, and engages in direct participation with the planning, authorizing, and organizing the utilization of Defendant SIGNIFY LLC's *telemarketing and solicitation campaigns— including, but not limited to* the preparation, approval, and collaboration of *all written material* utilized in each *unsolicited and illegal telemarketing and solicitation telephone call* complained of herein.

**(viii)**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant PIERRE, in his capacity as Chief Operating Officer of, by, and for Defendant SIGNIFY LLC, [and] in conjunction with Defendant ARMBRESTER and Defendant SENNEFF, [also] oversees and provides leadership, direction, and guidance for all the daily business activities of, by, for and on behalf of Defendant SIGNIFY LLC, *including, but not limited to* the purchasing or subscription to numerous telephone lists, databases, and platforms that contain tens-of-thousands of telephone numbers currently [listed] on the National DO-NOT-CALL Registry.

**(ix)**    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that (either individually, or in concert with others, and either directly, or indirectly) Defendant PIERRE, in his capacity as Chief Operating Officer of, by, and for Defendant SIGNIFY LLC, [and] in conjunction with Defendant ARMBRESTER and Defendant SENNEFF, [also] completely failed to maintain compliance, confirm compliance, and persist compliance with the Federal Trade Commission's Telemarketing Sales Rule, 16 C.F.R. 310.4(b). Id.

1       **(x)**    That at all times relevant and material herein, Plaintiff asserts, alleges

2   and maintains that (either individually, or in concert with others, and either directly, or indirectly)

3   Defendant PIERRE, in his capacity as Chief Operating Officer of, by, and for Defendant SIGNIFY

4   LLC, [and] in conjunction with Defendant ARMBRESTER and Defendant SENNEFF, [also] failed

5   to assure the "scrubbing" of telephone numbers that have been entered into the National DO-NOT-

6   CALL Registry database, such as Plaintiff's telephone numbers.

7       **(xi)**    That at all times relevant and material herein, Plaintiff asserts, alleges

8   and maintains that Defendant PIERRE, in his capacity as Chief Operating Officer of, by, and for

9   Defendant SIGNIFY LLC, [and] in conjunction with Defendant ARMBRESTER and Defendant

10   SENNEFF,  prepared and opened The Signify Health call center, a 28,320 sq. ft. facility, located at

11   the Orchard Meadows Subdivision, in East Rapid City, for the purpose of employing hundreds of

12   individuals to place, or cause to be placed, utilizing one or more Automatic Telephone Dialing

13   System(s) **("ATDS"),**[11] thousands of [daily] *unsolicited, illegal, and harassing telemarketing and*

14   *solicitation telephone calls*, just as those complained of herein, encouraging senior citizens, such as

15   Plaintiff, to make use of Defendants' products or services.

16   . . .

17   . . .

18   _____

19   [11]**The term "AUTOMATIC TELEPHONE DIALING SYSTEM," "AUTODIALER,"
"PREDICTIVE DIALER," and "ROBOCALL" (collectively "ATDS")**, as those terms are used

20   herein, refers to and means, but is not limited to, equipment which has the capacity— **(1)** to store or
produce telephone numbers to be called, using a random or sequential number generator; **(2)** to dial

21   such numbers; **(3)** hardware, when paired with certain software, has the capacity to store or produce

22   numbers and dial those numbers at random, in sequential order, or from a database of numbers; **(4)**
equipment that dials numbers and, when certain computer software is attached, also assists in

23   predicting when an agent will be available to take calls; and, **(5)** a system that need not actually store,
produce, or call randomly or sequentially generated telephone numbers, but only have the capacity

24   to do it. The Federal Communication Commission **("FCC")** has emphasized that the definition of
"automatic telephone dialing system" covers any equipment that has the specified capacity to

25   generate numbers and dial them without human intervention whether or not the numbers called

26   actually are randomly or sequentially generated or come from a calling list. As noted, the FCC has
used "robocall" to refer both to calls placed using an automatic telephone dialing system and to

27   prerecorded calls without reference to whether such prerecorded calls are made with an autodialer.

28                                    **-21-**

(xii)    That at all times relevant and material herein, Plaintiff asserts, alleges and maintains that Defendant PIERRE, in his capacity as Chief Operating Officer of, by, and for Defendant SIGNIFY LLC, [also] earns, has previously earned, and continues to earn hundreds-of-thousands of dollars by engaging in the planning, authorizing, and organizing the utilization of unsolicited, *illegal, and harassing telemarketing and solicitation telephone calls* within the City of Las Vegas, the County of Clark,  and the State of Nevada, without [first] obtaining the mandated written consent of the called party[ies].

11.    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly), Defendants, and each of them [completely] failed to verify that Plaintiff's landline (wired) telephone number is entered into the National DO-NOT-CALL Registry database.

12.    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly), Defendants, and each of them [completely] failed to "scrub" (remove), or require the "scrubbing" (removal) of each of Plaintiff's landline (wired) telephone number, that is entered into the National DO-NOT-CALL Registry database.

13.    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Plaintiff is unaware of the true names and legal capacities whether individual, corporate, associate, or otherwise of Defendants DOES F-X, and ROE CORPORATIONS XI-XX sued herein inclusive, and therefore sues those Defendants and any Co-Defendants by such fictitious names.

14.    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Plaintiff is informed and believes, and thereon alleges that each of the Defendants, herein named, or any Co-Defendants designated herein DOES F-X, and ROE CORPORATIONS XI-XX, are in some way legally responsible and liable for the events referred to hereinafter, and proximately caused the damages alleged herein.

. . .

. . .

-22-

15.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) in doing the acts and omissions alleged herein, acted individually, or through their owners, co-owners, officers, partners, directors, associates, agents, employees, and independent contractors, including, but not limited to the fictitious Defendants and any Co-Defendants named herein as DOES F-X and ROE CORPORATIONS XI-XX, each of whom was acting within the purpose and scope of that agency, employment, and conspiracy, and said acts and omissions were known to, and authorized and ratified by, each of the other Defendants.

16.     That Plaintiff pray leave to insert said DOES F-X, and ROE CORPORATIONS XI-XX DOES' true names and legal capacities when ascertained.

**IV.**

**FACTUAL ALLEGATIONS**
**(First Set)**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through sixteen as aforementioned.

17.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— Defendants, together with all of its subsidiaries, had established Standards of Conduct to provide guidance to all employees, affiliates, third-parties, subcontractors, independent contractors, vendors, consultants, and government regulators.

18.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the Standards of Conduct were establish to maintain [required] methods, within ethical and legal standards, engaged in by Defendants in their daily activities.

19.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the Standards of Conduct are mandatory and must be followed by every officer, director, employee (full-time, part-time and temporary), contractor, and vendor of, by, and for Defendant SIGNIFY LLC.

**20.**    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the Standards of Conduct mandate that no employee, officer, or director, of the Defendants, shall commit an illegal or unethical act, or instruct others to do so, that Defendant SIGNIFY LLC will conduct its business in compliance with all applicable Federal, state and local laws and regulations. See Signify Health, Inc., Standards of Conduct.

**21.**    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually or in concert with each other, and either directly or indirectly) Defendants advertise that Defendants are "...a leading healthcare platform that leverages advanced analytics, technology, and nationwide healthcare provider networks to create and power value-based payment programs..." and that its "...mission is to transform how care is paid for and delivered...". See Securities and Exchange Commission (**"SEC"**), Form S-1, Registration Statement, January 19, 2021 (**"Form S-1"**).

**22.**    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually or in concert with other, and either directly or indirectly) Defendants maintain that Defendants—

> "...are a market leader in two fast-growing segments of the value-based healthcare payment industry: payment models based on individual episodes of care and in-home health evaluations (**"IHEs"**)... Payment models based on individual episodes of care organize or bundle payments for all, or a substantial portion of, services received by a patient in connection with an episode of care, such as a surgical procedure, particular condition or other reason for a hospital stay." Form S-1.

**23.**    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually or in concert with other, and either directly or indirectly) Defendants maintain that Defendants' "...customers include health plans, governments, employers, health systems and physician groups." Form S-1.

. . .

. . .

. . .

24.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually or in concert with other, and either directly or indirectly) Defendants maintain that Defendants—

> "...use advanced targeting...predictive models...identifying and engaging individuals who may benefit from our services. We deploy email, SMS text messages, telephone outreach and digital-marketing campaigns to help us effectively engage individuals across the numerous value-based payment programs we support." Form S-1.

25.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually or in concert with other, and either directly or indirectly) Defendants maintain that **Defendants**—

> "...**are subject to a variety of federal and state laws that regulate telecommunications and telemarketing activities**, including the following:
>
> **The TCPA places restrictions on making certain telemarketing calls, non-telemarketing calls**, faxes, and SMS text messages to consumers. **Prior express consent of consumers may be required to override certain activities prohibited under the TCPA**. The scope and interpretation of the TCPA, and other laws that are or may be applicable to making calls and delivering SMS text messages to consumers, are continuously evolving and developing. **TCPA violations may be subject to penalties of $500 per violation and $1,500 for each willful or knowing violation**. Recent expansion of the law through the Telephone Robocall Abuse Criminal Enforcement and Deterrence ("TRACED") Act expanded the authority of the Federal Communications Commission ("FCC") to impose civil penalties of up to $10,000 per call for intentional violations of federal robocall laws and increased the time period that the FCC can take action to against those who intentionally violate federal law to four years. This penalty is in addition to other penalties for TCPA violations. Form S-1.[12] **(emphasis added)**.

26.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— through numerous *unsolicited, illegal, and harassing telemarketing and solicitation telephone calls* to Plaintiff, Defendants' [employee, and third-party] telemarketers [using misleading statements] attempted to pressure Plaintiff into having a medical representative [employed by Defendants] to come to Plaintiff's residence for a [unspecified] medical examination.

. . .

. . .

---

[12]Both Defendants ARMBRESTER and SENNEFF are highlighted in and signed Form S-1, and Defendant PIERRE is highlighted several times in Form S-1.

**27.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually or in concert with other, and either directly or indirectly) Defendants' [employee, and third-party] telemarketers [falsely] advised Plaintiff that the medical examination was required by his Medicare provider.

**28.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually or in concert with other, and either directly or indirectly) Defendants authorized the publication of help-wanted-ads seeking Healthcare Call Center Professional, who would engage in telemarketing and solicitation of Defendants' products and services..

**29.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendants' help-wanted-ads seek, in-part, employees to:

> "...**contact members of various Medicare and/or Medicaid health plans by phone to offer, explain, and schedule**...in-home or virtual healthcare risk evaluation. Handle a high volume of outbound calls placed by the telephony system to Medicare and/or Medicaid health plan members to offer, explain, and schedule a...in-home health risk evaluation."

**30.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually or in concert with each other, and either directly or indirectly) Defendants, and each of them— authorized, supported, and encouraged its Call Center, and third-party telemarketing employees to place, or cause to be placed, utilizing one or more ATDS, unsolicited telemarketing and solicitation telephone calls, to residential telephone numbers, who's telephone numbers have continuously been imbedded in the National DO-NOT-CALL Registry, such as Plaintiff's.

**31.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually or in concert with each other, and either directly or indirectly) Defendants, and each of them, authorized, supported, and encouraged its Call Center, and third-party telemarketing employees to place, or cause to be placed, utilizing one or more ATDS, *unsolicited, harassing, and illegal telemarketing and solicitation telephone calls*, such as those complained of herein— without first obtaining Plaintiff's written consent. See *n.5, supra*.

-26-

**32.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— because each Defendant, herein named, ratified each of the *unsolicited, harassing, and illegal telemarketing and solicitation telephone calls* complained of herein, consequently, each Defendant, herein named is (either individually or in concert with each other, and either directly or indirectly) *vicarious liable* for each *illegal act* complained of herein.

**33.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— (either individually or in concert with each other, and either directly or indirectly) Defendants, and each of them, approved, sanctioned, authorized, and was complicit in each of the [at a minimum] eleven (11) *unsolicited, harassing, and illegal telemarketing and solicitation telephone call*s complained of herein.

**34.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— (either individually or in concert with each other, and either directly or indirectly) Defendants, and each of them, failed to take appropriate measures to prevent each of the eleven (11) *unsolicited, harassing, and illegal telemarketing and solicitation telephone calls* complained of herein.

**35.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— (either individually or in concert with each other, and either directly or indirectly) Defendants, and each of them, had knowledge of facts that their Call Center, and third-party employees had previously, and continue to initiate and engage in each of the *unsolicited, harassing, and illegal telemarketing and solicitation telephone calls* complained of herein, which would have led a reasonable person to investigate further.

**36.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— at no time had Plaintiff [ever] contacted any of the above-named Defendants, nor any of the above-named Defendants' owners, officers, managers, employees, representatives, agents, and subsidiaries - for any purpose.

. . .

. . .

## V.

### FACTUAL ALLEGATIONS
#### (Second Set)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through thirty-six as aforementioned.

37.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendants, and each of them, have been accorded unhampered access to all medical and Medicare records, including Plaintiff's, that is in the possession, custody, and control of Humana Inc., and its subsidiaries.

38.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that each of the eleven (11) unsolicited, illegal telemarketing and solicitation telephone calls from Defendants, to Plaintiff's residential telephone number (702.341.1776), was "spoofed" with a false caller identification, falsely appearing to come from a particular business, such as HUMANA, to increase Plaintiff's chances of answering Defendants' eleven (11) *unsolicited, illegal, and annoying telemarketing and solicitation telephone calls*.

39.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually or in concert with each other, and either directly or indirectly) Defendants "willfully" and "knowingly" enabled fraudulent spoofing of Defendants ID to increase Plaintiff's chances of answering Defendants' eleven (11) *unsolicited, illegal, and deceptive telemarketing and solicitation telephone calls*.

40.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendants ignored Plaintiff's [several] demands that Defendants cease and desist from calling him.

41.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendants representative confirmed that Plaintiff's telephone number was entered on Defendants' [internal] DO-NOT-CALL List, yet was ignored.

**42.** **First *Unsolicited, Illegal* Telemarketing and Solicitation Telephone Call to Plaintiff Without First Obtaining Plaintiff's (*Written or Oral*) Consent to Receive any Calls From Defendants, or Defendants' Owners, Co-Owners, Officers, Directors, Managers, Members, Employees, Representatives, Agents, Independent Contractors, or Telemarketing Entities Retained by Defendants:**

**1.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that on April 16, 2018, at [approximately] 1:51 p.m., an unsolicited, illegal telemarketing telephone call was initiated, by the utilization of an ATDS, and directed to Plaintiff's landline telephone number 702.341.1776.

**2.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the April 16, 2018 (1:51 p.m.) incoming telephone call was displayed on Plaintiff's Caller ID **("CID")** as originating from [Defendant] HUMANA, and from the telephone number of 1.855.319.4450.

**3.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— when Plaintiff answered the April 16, 2018 (1:51 p.m.) incoming call, originating from [Defendant] HUMANA, and from the telephone number of 1.855.319.4450, and said "Hello," "Hello," the following is a synopsis of the conversation:

| | |
|---|---|
| **Telemarketer ("Caller"):** | Hello. May I please speak with Mr. Paul Edwards...My name is [sounded like] Keshana, and I'm calling you from CENSEO HEALTH...I was hoping to speak with you...about the benefits of the in-home health and well being incessant. |
| **Plaintiff:** | ...I record my conversations...I'm really not interested. |
| **Caller:** | ...You are speaking with me on a recorded line...why did you decided to decline our service... |
| **Plaintiff:** | I have no need for it. Not interested. Don't care. |
| **Caller:** | Would you like our phone number for future references? |
| **Plaintiff:** | Not at all. |

The unsolicited telemarketing call ended.

. . .

. . .

-29-

**43.** **Second *Unsolicited, Illegal* Telemarketing and Solicitation Telephone Call to Plaintiff Without First Obtaining Plaintiff's (*Written or Oral*) Consent to Receive any Calls From Defendants, or Defendants' Owners, Co-Owners, Officers, Directors, Managers, Members, Employees, Representatives, Agents, Independent Contractors, or Telemarketing Entities Retained by Defendants:**

1. That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that on April 2, 2019, at [approximately] 9:45 a.m., an unsolicited, illegal telemarketing telephone call was initiated, by the utilization of an ATDS, and directed to Plaintiff's landline telephone number 702.341.1776.

2. That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the April 2, 2019 (9:45 a.m.) incoming telephone call was displayed on Plaintiff's CID as originating from [Defendant] HUMANA, and from the telephone number of 1.855.319.4450.

3. That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— when Plaintiff answered the April 2, 2019 (9:45 a.m.) incoming call originating from [Defendant] HUMANA, and from the telephone number of 1.855.319.4450, and said "Hello," the following is a synopsis of the conversation:

| | |
|---|---|
| **Telemarketer ("Caller"):** | Hello. May I please speak with Mr. Paul Edwards...My name is [sounded like] Keyana, and I'm calling you from SIGNIFY HEALTH...And the number I reached you at is the best number? |
| **Plaintiff:** | Tell me what this is about...I have no idea who you are. |
| **Caller:** | Before I continue I do need to make you aware that the calls are recorded... |
| **Plaintiff:** | That's fine. Let me also advise you that I also record all my telephone conversations. |
| **Caller:** | ...OK sir...We're just calling...to schedule an in-home health and well being assessment... |
| **Plaintiff:** | Why do I need a in-home health...That makes no sense to me. |
| **Caller:** | ...I'm with SIGNIFY HEALTH... |
| **Plaintiff:** | ...Since I don't know who you are...I don't want to receive any more calls from your company. |

-30-

1    **Caller:**                Thank you sir.

2    The unsolicited telemarketing call ended.[13]

3    **44.   Third *Unsolicited, Illegal* Telemarketing and Solicitation Telephone Call
        to Plaintiff Without First Obtaining Plaintiff's (*Written or Oral*) Consent to
4       Receive any Calls From Defendants, or Defendants' Owners, Co-Owners,
        Officers, Directors, Managers, Members, Employees, Representatives, Agents,
5       Independent Contractors, or Telemarketing Entities Retained by Defendants:**

6          **1.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and

7    maintains that on October 9, 2020, at [approximately] 8:37 a.m., an unsolicited, illegal telemarketing

8    telephone call was initiated, by the utilization of an ATDS, and directed to Plaintiff's landline

9    telephone number 702.341.1776.

10         **2.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and

11   maintains that the October 9, 2020 (8:37 a.m.) incoming telephone call was displayed on Plaintiff's

12   CID as originating from [Defendant] HUMANA, and from the telephone number of 1.855.215.1830.

13         **3.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and

14   maintains that Plaintiff did not answer the October 9, 2020 (8:37 a.m.) incoming call originating

15   from [Defendant] HUMANA, and from the telephone number of 1.855.215.1830.

16         **4.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and

17   maintains that the incoming telephone caller left a message on Plaintiff's answering device stating

18   that the call was from [Defendant] HUMANA, and the call was regarding a medical insurance plan.[14]

19

20

------

21   [13]Because this was the second call by, for, or on behalf of the same entity, in less than a one (1) year
22   period, pursuant to 47 U.S.C. § 227(c)(5)— **A person who has received more than one telephone
     call within any 12-month period by or on behalf of the same entity,** in violation of the regulations
23   prescribed under this subsection may...bring in an appropriate court— (A) an action based on a
     violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action
24   to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for
     each such violation, whichever is greater, or (C) both such actions.
25   [14]The FCC's interpretation of 47 U.S.C. § 227(b)(1)(A) is consistent with the dictionary's definition
26   of call in that it is defined as "to communicate with or try to get into communication with a person
     by telephone." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 06/19/2009). Also see
27   the TCA, 47 U.S.C. § 153(50).

28                                            **-31-**

**45.** **Fourth *Unsolicited, Illegal* Telemarketing and Solicitation Telephone Call to Plaintiff Without First Obtaining Plaintiff's (*Written or Oral*) Consent to Receive any Calls From Defendants, or Defendants' Owners, Co-Owners, Officers, Directors, Managers, Members, Employees, Representatives, Agents, Independent Contractors, or Telemarketing Entities Retained by Defendants:**

**1.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that on October 17, 2020, at [approximately] 9:32 a.m., an unsolicited, illegal telemarketing telephone call was initiated, by the utilization of an ATDS, and directed to Plaintiff's landline telephone number 702.341.1776.

**2.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the October 17, 2020 (9:32 a.m.) incoming telephone call was displayed on Plaintiff's CID as originating from [Defendant] HUMANA, and from the telephone number of 1.855.215.1830.

**3.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Plaintiff did not answer the October 17, 2020 (9:32 a.m.) incoming call originating from [Defendant] HUMANA, and from the telephone number of 1.855.215.1830.

**4.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the incoming telephone caller left a message on Plaintiff's answering device identifying the caller as Rick, calling on behalf of [Defendant] HUMANA.

**46.** **Fifth *Unsolicited, Illegal* Telemarketing and Solicitation Telephone Call to Plaintiff Without First Obtaining Plaintiff's (*Written or Oral*) Consent to Receive any Calls From Defendants, or Defendants' Owners, Co-Owners, Officers, Directors, Managers, Members, Employees, Representatives, Agents, Independent Contractors, or Telemarketing Entities Retained by Defendants:**

**1.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that on October 29, 2020, at [approximately] 10:28 a.m., an unsolicited, illegal telemarketing telephone call was initiated, by the utilization of an ATDS, and directed to Plaintiff's landline telephone number 702.341.1776.

**2.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the October 29, 2020 (10:28 a.m.) incoming telephone call was displayed on Plaintiff's CID as originating from [Defendant] HUMANA, and from the telephone number of 1.855.215.1830.

**3.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— when Plaintiff answered the October 29, 2020 (10:28 a.m.) incoming call originating from [Defendant] HUMANA, and from the telephone number of 1.855.215.1830, and said "Hello," the telemarketer (**"caller"**) said they were calling from [Defendant ] HUMANA, and wanted to schedule an in-home medical testing.

**4.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that he advised the caller that he had [explicitly] told previous callers not to call Plaintiff. Plaintiff terminated the call.

**47.**      **Sixth *Unsolicited, Illegal* Telemarketing and Solicitation Telephone Call to Plaintiff Without First Obtaining Plaintiff's (*Written or Oral*) Consent to Receive any Calls From Defendants, or Defendants' Owners, Co-Owners, Officers, Directors, Managers, Members, Employees, Representatives, Agents, Independent Contractors, or Telemarketing Entities Retained by Defendants:**

**1.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that on March 3, 2021, at [approximately] 1:17 p.m., an unsolicited, illegal telemarketing telephone call was initiated, by the utilization of an ATDS, and directed to Plaintiff's landline telephone number 702.341.1776.

**2.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the March 3, 2021 (1:17 p.m.) incoming telephone call was displayed on Plaintiff's CID as originating from [Defendant] HUMANA, and from the telephone number of 1.855.215.1830.

**3.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— because Plaintiff was on another call, Plaintiff was unable to answer the March 3, 2021 (1:17 p.m.) incoming telephone call. See *n.14, supra*.

**48.**      **Seventh *Unsolicited, Illegal* Telemarketing and Solicitation Telephone Call to Plaintiff Without First Obtaining Plaintiff's (*Written or Oral*) Consent to Receive any Calls From Defendants, or Defendants' Owners, Co-Owners, Officers, Directors, Managers, Members, Employees, Representatives, Agents, Independent Contractors, or Telemarketing Entities Retained by Defendants:**

**1.**      That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that on March 4, 2021, at [approximately] 9:25 a.m., an unsolicited, illegal telemarketing telephone call was initiated, by the utilization of an ATDS, and directed to Plaintiff's landline telephone number 702.341.1776.

1    **2.**    That at all times relevant and material herein, Plaintiff asserts, alleges, and

2 maintains that the March 4, 2021 (9:25 a.m.) incoming telephone call was displayed on Plaintiff's

3 CID as originating from [Defendant] HUMANA, and from the telephone number of 1.855.215.1830.

4    **3.**    That at all times relevant and material herein, Plaintiff asserts, alleges, and

5 maintains that— when Plaintiff answered the March 4, 2021 (9:25 a.m.) incoming call, [purportedly]

6 originating from [Defendant] HUMANA, and from the telephone number of 1.855.215.1830,  and

7 said "Hello," the telemarketer **("caller")** said she was calling from [Defendant ] SIGNIFY

8 HEALTH, and the following is a synopsis of the conversation

9     **Telemarketer ("Caller"):**    Hello. is Paul Edwards available?

10    **Plaintiff:**    Speaking.

11    **Caller:**    Hi. My name is Courtney, and I'm calling you
from SIGNIFY HEALTH...We are on a recorded line...
12

    **Plaintiff:**    Why are you calling me?
13
    **Caller:**    We're calling in regards to the in-home health visit, and
14    just to protect your privacy, can you please verify your
    date-of-birth and address?
15
    **Plaintiff:**     Well...since I don't know if you're a telemarketer...I
16    wouldn't confirm any personal information...What
    company did you say your from?
17
    **Caller:**    We call from [Defendant] SIGNIFY HEALTH...
18
    **Plaintiff:**    ...your company has called me before, I've told them
19    to put me on a DO-NOT-CALL List - Apparently that's
    not good enough - So tell whoever owns your company,
20    I will see them in court.

21    **Caller:**    Hangs-up laughing.

22 . . .

23 . . .

24 . . .

25

26

27

28                                    **-34-**

**49.** **Eighth *Unsolicited, Illegal* Telemarketing and Solicitation Telephone Call to Plaintiff Without First Obtaining Plaintiff's (*Written or Oral*) Consent to Receive any Calls From Defendants, or Defendants' Owners, Co-Owners, Officers, Directors, Managers, Members, Employees, Representatives, Agents, Independent Contractors, or Telemarketing Entities Retained by Defendants:**

**1.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that on March 10, 2021, at [approximately] 2:08 p.m., an unsolicited, illegal telemarketing telephone call was initiated, by the utilization of an ATDS, and directed to Plaintiff's landline telephone number 702.341.1776.

**2.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the March 10, 2021 (2:08 p.m.) incoming telephone call was displayed on Plaintiff's CID as originating from [Defendant] HUMANA, and from the telephone number of 1.855.215.1830.

**3.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— Plaintiff did not answer the incoming call, nor did the caller leave any message on Plaintiff's answering device. See *n.14, supra.*

**50.** **Ninth *Unsolicited, Illegal* Telemarketing and Solicitation Telephone Call to Plaintiff Without First Obtaining Plaintiff's (*Written or Oral*) Consent to Receive any Calls From Defendants, or Defendants' Owners, Co-Owners, Officers, Directors, Managers, Members, Employees, Representatives, Agents, Independent Contractors, or Telemarketing Entities Retained by Defendants:**

**1.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that on March 11, 2021, at [approximately] 9:41 a.m., an unsolicited, illegal telemarketing telephone call was initiated, by the utilization of an ATDS, and directed to Plaintiff's landline telephone number 702.341.1776.

**2.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the March 11, 2021 (9:41 a.m.) incoming telephone call was displayed on Plaintiff's CID as originating from [Defendant] HUMANA, and from the telephone number of 1.855.215.1830.

**3.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— when Plaintiff answered the March 11, 2021 (9:41 a.m.) incoming call, [purportedly] originating from [Defendant] HUMANA, and from the telephone number of 1.855.215.1830, and said "Hello," the following is a synopsis of the conversation:

| | | |
|---|---|---|
| **Telemarketer ("Caller"):** | | Hello, is Paul Edwards there? |
| **Plaintiff:** | | Speaking. |
| **Caller:** | | This is Rebecca, and I am with SIGNIFY HEALTH... |
| **Plaintiff:** | | ...How can I help you? |
| **Caller:** | | First I need to let you know that we do record all of our calls... |
| **Plaintiff:** | | So do I. |
| **Caller:** | | ...the reason that I'm calling you today is to schedule an in-home health visit...with a licensed physician, or a nurse practitioner... |
| **Plaintiff:** | | ...let me interrupt you before you go to far...What company are you? |
| **Caller:** | | I am with SIGNIFY HEALTH... |
| **Plaintiff:** | | ...my Caller ID says it's from HUMANA, but apparently this call is not from HUMANA, it's from, SIGNIFY, or whatever your company is...I've told...representatives...several months ago not to call me. To put me on your internal Do-Not-Call list...Tell you're boss...I will be suing them for federal law violations, and state law violations. I don't know why I keep getting these calls, and why it would show on my Caller ID HUMANA, since you're not HUMANA— and I don't do home visits. |
| **Caller:** | | Ok...We work for HUMANA... |
| **Plaintiff:** | | ...That's irrelevant. Your spoofing[15] your phone calls because it shows HUMANA, not your company name...But to keep calling me, since my numbers on the Do-Not-Call list...and since I said...three times...I don't want to be called...so I don't know why I keep getting these calls after I told your company to stop... |
| **Caller:** | | ...If you change your mind...give us a call... |
| **Plaintiff:** | | ...I'm not going to change my mind...I want to request a copy of your company's Do-Not-Call Policy. |

---

[15]Spoofing is the act of disguising a communication from an unknown source as being from a known, trusted source. Caller ID spoofing make it appear as if a phone call is coming from a specific name (business or otherwise) and/or number.

1        **Caller:**                    Ok...

2        The call ended.

3        51.     **Tenth *Unsolicited, Illegal* Telemarketing and Solicitation Telephone Call
         to Plaintiff Without First Obtaining Plaintiff's (*Written or Oral*) Consent to
4                Receive any Calls From Defendants, or Defendants' Owners, Co-Owners,
                 Officers, Directors, Managers, Members, Employees, Representatives, Agents,
5                Independent Contractors, or Telemarketing Entities Retained by Defendants:**

6                1.      That at all times relevant and material herein, Plaintiff asserts, alleges, and

7        maintains that on September 28, 2021, at [approximately] 10:37 a.m., an unsolicited, illegal

8        telemarketing telephone call was initiated, by the utilization of an ATDS, and directed to Plaintiff's

9        landline telephone number 702.341.1776.

10               2.      That at all times relevant and material herein, Plaintiff asserts, alleges, and

11       maintains that the September 28, 2021 (10:37 a.m.) incoming telephone call was displayed on

12       Plaintiff's CID as originating from [Defendant] [V]HUMANA, and from the telephone number of

13       1.855.215.1830.

14               3.      That at all times relevant and material herein, Plaintiff asserts, alleges, and

15       maintains that— Plaintiff did not answer the incoming call, nor did the caller leave any message on

16       Plaintiff's answering device. See *n.14, supra*.

17       52.     **Eleventh *Unsolicited, Illegal* Telemarketing and Solicitation Telephone Call
         to Plaintiff Without First Obtaining Plaintiff's (*Written or Oral*) Consent to
18               Receive any Calls From Defendants, or Defendants' Owners, Co-Owners,
                 Officers, Directors, Managers, Members, Employees, Representatives, Agents,
19               Independent Contractors, or Telemarketing Entities Retained by Defendants:**

20               1.      That at all times relevant and material herein, Plaintiff asserts, alleges, and

21       maintains that on October 1, 2021, at [approximately] 12:52 p.m., an unsolicited, illegal

22       telemarketing telephone call was initiated, by the utilization of an ATDS, and directed to Plaintiff's

23       landline telephone number 702.341.1776.

24               2.      That at all times relevant and material herein, Plaintiff asserts, alleges, and

25       maintains that the October 1, 2021 (12:52 p.m.) incoming telephone call was displayed on Plaintiff's

26       CID as originating from [Defendant] [V]HUMANA, and from the telephone number of

27       1.855.215.1830.

28

**3.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that— when Plaintiff answered the October 1, 2021 (12:52 p.m.) incoming call, [purportedly] originating from [Defendant] [V]HUMANA, and from the telephone number of 1.855.215.1830, and said "Hello," "Hello," the following is a synopsis of the conversation

| | |
|---|---|
| **Telemarketer ("Caller"):** | Hello, may I please speak with Paul? |
| **Plaintiff:** | Who's calling? |
| **Caller:** | ...my name is [sounds like] Katela...I'm calling with SIGNIFY HEALTH...about an in-home health visit...this call is recorded... |
| **Plaintiff:** | ...I believe your company has called me before, and I told them I didn't want to be called again. |
| **Caller:** | ...let me check...I see here its...on the Do-Not-Call List... |
| **Plaintiff:** | Thank you. |

The call ended.

**VI.**

**FACTUAL ALLEGATIONS**
**(Third Set)**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through fifty-two as aforementioned.

**53.** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that (either individually or in concert with others, and either directly or indirectly) [neither] Defendant SIGNIFY HEALTH, INC., nor Defendant CURE TOPCO, LLC, a/d/b/a SIGNIFY HEALTH, LLC, f/k/a CHLOE OX PARENT, LLC, f/k/a CURE BORROWER, LLC, a/d/b/a SIGNIFY HEALTH MEDICAL ASSOCIATES, PLLC, a/d/b/a SIGNIFY HEALTH MEDICAL ASSOCIATES OF CALIFORNIA, P.C., a/d/b/a CENSEO HEALTH, LLC, a/k/a CENSEO HEALTH, a/k/a CENSEOHEALTH, a/d/b/a CURE INTERMEDIATE 3, LLC, a/d/b/a CHLOE OX INTERMEDIATE 3, LLC, or Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER, nor Defendant STEVEN SENNEFF, or Defendant DAVID PIERRE took any

1   steps, or circulated any procedures requiring its Owners, Co-Owners, Officers, Directors, Managers,

2   Members, Employees, Representatives, Agents, Independent Contractors, or Telemarketing Entities

3   Retained by Defendants— to verify that telephone numbers [such as Plaintiff's] were registered on

4   the National DO-NOT-CALL Registry.

5       54.   That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains

6   that (either individually or in concert with others, and either directly or indirectly) Defendant

7   BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER, and Defendant STEVEN

8   SENNEFF, and Defendant DAVID PIERRE— authorized, directed, and had control over each of

9   the eleven (11) *multiple unsolicited, illegal telemarketing and solicitations telephone calls* to

10  Plaintiff's residential telephone number (702.341.1776), albeit Plaintiff's telephone number had been

11  on the National Do-Not-Call Registry,[16] established and maintained by the Federal Trade

12  Commission under 16 C.F.R. § 310.

13      55.   That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains

14  that (either individually or in concert with others, and either directly or indirectly) Defendant

15  BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER, and Defendant STEVEN

16  SENNEFF, and Defendant DAVID PIERRE, authorized, directed, and had control over each of the

17  eleven (11) *unsolicited, illegal, and harassing telemarketing and solicitation telephone calls* to

18  Plaintiff' residential telephone number (702.341.1776), without first obtaining Plaintiff's prior

19  (*written or oral*) consent to receive any calls by, for, from, or on behalf of Defendants, or

20  Defendants' employees, representatives, agents, and independent contractors.

21      56.   That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains

22  that no relation [ever] existed, business or otherwise, between Plaintiff and any Defendants named

23  herein, nor had Plaintiff ever contacted Defendants, or Defendants' owners, co-owners, officers,

24  directors, managers, members, employees, representatives, agents, or independent contractors

25  regarding any of Defendants' products and services.

26

27  [16]Plaintiff's telephone numbers (702.341.1776 and 702.893.1776) has been on the National Do-Not-Call Registry since its inception in June 2003.

28                                          -39-

57.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the National Do-Not-Call Registry prohibits calling a telephone subscriber who has registered his or her phone number on the National Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2).

58.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER, and Defendant STEVEN SENNEFF, and Defendant DAVID PIERRE **have completely failed** to provide Plaintiff, as he requested, with Defendants' DO-NOT-CALL policy. 47 C.F.R. 64.1200(d)(1).

59.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) were, and continue to be aware that *unsolicited telemarketing and solicitation telephone calls are illegal* and violative of the TCPA, unless the caller, such as Defendants, first obtains *written* (*or oral*) [prior express] consent from the called party.

60.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Section 227 (of the TCPA) [also] provides for a separate private right of action under subsection (c)(5), which deals with live telephone calls, not with pre-recorded or artificial messages. *Infra.*

61.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that under subsection (c), of the TCPA, in order to have a private right of action, the recipient must receive more than one phone call, regarding the same entity, in a 12-month period, such as alleged herein.

62.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Plaintiff's telephone records confirm that Plaintiff received eleven (11) *unsolicited, illegal telemarketing and solicitation telephone calls* by, for, and on behalf of Defendants in a period of less than 12 months.

63.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) violated several sections of Nevada's Revised Statutes; the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*; the Rules and Regulations Implementing the TCPA, 47

-40-

C.F.R. § 64.1200 *et seq.*; and the Telephone Sales Rule, 16 C.F.R. Part 301 as amended— by causing the "*willful*" or "*knowing*" transmissions of *multiple unsolicited, illegal telemarketing and solicitation telephone calls* to Plaintiff's landline telephone number (702.341.1776)— without first obtaining the written consent from the Plaintiff to receive [any] such calls.

64.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that each of the *unsolicited, illegal telemarketing and solicitation telephone calls* complained of herein, were initiated for the sole purpose to urge Plaintiff into utilizing Defendants products or services.

65.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly), **failed to take appropriate measures to prevent the illegal acts complained of herein**.

## VII.

### FACTUAL ALLEGATIONS
### (Fourth Set)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through sixty-five as aforementioned.

66.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that— at the time of each illegal act complained of herein, Plaintiff owned, operated, and controlled a residential telephone with the assigned telephone number of 702.341.1776.

67.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that (either individually, or in concert with others, and either directly, or indirectly) each of the above-named Defendants, and each of Defendants' business locations, owned, operated, or controlled "customer premises equipment" as defined by the TCA, 47 U.S.C. § 153(16).

. . .

. . .

. . .

68.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that (either individually or in concert with others, and either directly or indirectly)each Defendant herein named authorized, condoned, and encouraged "interstate communications," as defined by the TCA, 47 U.S.C.S § 152,[17] to contact Medicare participants, such as Plaintiff, to induce the use of Defendants' products or services.

69.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that (either individually or in concert with others, and either directly or indirectly)Defendants authorized, condoned, and encouraged "[tele]communications," as defined by the TCA, 47 U.S.C. § 153(50), to contact Medicare participants, such as Plaintiff, to induce the use of Defendants' products or services. Also see, *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 06/19/2009).

70.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that (either individually or in concert with others, and either directly or indirectly)Defendants, and each of them, were in violation of the regulations prescribed, altogether failed to establish, and failed to implement reasonable practices and procedures to effectively prevent Defendants' *unsolicited, illegal telemarketing and solicitation telephone calls* to Plaintiff's residential and wireless telephone numbers.

71.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that each of the eleven (11) *unsolicited, illegal, and deceptive telemarketing and solicitation telephone calls* to Plaintiff's residential telephone number constituted a "communication" as defined by 47 U.S.C. § 227(b)(1)(A) of the TCPA.[18]

. . .

. . .

. . .

---

[17]Communications Act of 1934, Public Law No. 416, June 19, 1934 (Title I, Sec. 3(e)).

[18]The FCC's interpretation of 47 U.S.C. § 227(b)(1)(A) is consistent with the dictionary's definition of call in that it is defined as "to communicate with or try to get into communication with a person by telephone." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 06/19/2009).

72.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that— as a result of the acts and omissions of each Defendant herein named, and in order to punish each of those Defendants for their *malicious and illegal conduct*, as well as to deter each Defendant named herein from committing similar acts in the future, Plaintiff is entitled to recover any statutory damages, punitive damages, and exemplary damages for Defendants' violations of NRS, 47 C.F.R. § 64.1200, TCA, and TCPA— in amounts to be determined at trial.

73.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) neither maintained, nor maintains procedures designed to comply with the Telephone Sales Rule, 16 C.F.R. Part 301 et seq., as amended.

## VIII.

### FACTUAL ALLEGATIONS
### (Vicarious Liability)

Plaintiff repeats, realleges,, and incorporates by reference paragraphs one through seventy-three as aforementioned.

74.     **BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER**

(i)     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER is vicariously liable for each illegal act complained of herein, because Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER authorized, condoned, and ratified each illegal act complained of herein.

(ii)    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER is vicariously liable for each illegal act complained of herein, because Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER had actual knowledge of, approved, and was complicit in each illegal act complained of herein.

**(iii)** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER is vicariously liable for each illegal act complained of herein, because Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER, having actual knowledge of the illegal acts complained of herein, failed to take appropriate measures to prevent, or stop those illegal acts.

**(iv)** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER is vicariously liable for each illegal act complained of herein, because an agency relationship existed between Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER and each telemarketing entity that placed, or cause to be placed, each telemarketing telephone call complained of herein.

**(v)** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER is vicariously liable for each illegal act complained of herein, because Defendant BRADFORD KYLE ARMBRESTER, a/k/a KYLE ARMBRESTER had knowledge of each illegal act complained of herein, which would have led a reasonable person to investigate further.

**75.** **STEVEN SENNEFF**

**(i)** That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant STEVEN SENNEFF is vicariously liable for each illegal act complained of herein, because  Defendant STEVEN SENNEFF authorized, condoned, and ratified each illegal act complained of herein.

. . .

. . .

-44-

**(ii)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant STEVEN SENNEFF is vicariously liable for each illegal act complained of herein, because Defendant STEVEN SENNEFF had actual knowledge of, approved, and was complicit in each illegal act complained of herein.

**(iii)**    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant STEVEN SENNEFF is vicariously liable for each illegal act complained of herein, because Defendant STEVEN SENNEFF, having actual knowledge of the illegal acts complained of herein— failed to take appropriate measures to prevent, or stop those illegal acts.

**(iv)**    That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant STEVEN SENNEFF is vicariously liable for each illegal act complained of herein, because an agency relationship existed between Defendant STEVEN SENNEFF and each telemarketing entity that placed, or caused to be placed, each telemarketing telephone call complained of herein.

**(v)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant STEVEN SENNEFF is vicariously liable for each illegal act complained of herein, because Defendant STEVEN SENNEFF had knowledge of each illegal act complained of herein, which would have led a reasonable person to investigate further.

76.    **DAVID PIERRE**

**(i)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant DAVID PIERRE is vicariously liable for each illegal act complained of herein, because Defendant DAVID PIERRE authorized, condoned, and ratified each illegal act complained of herein.

-45-

**(ii)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant DAVID PIERRE is vicariously liable for each illegal act complained of herein, because Defendant DAVID PIERRE had actual knowledge of, approved, and was complicit in each illegal act complained of herein.

**(iii)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant DAVID PIERRE is vicariously liable for each illegal act complained of herein, because Defendant DAVID PIERRE, having actual knowledge of the illegal acts complained of herein, and failed to take appropriate measures to prevent, or stop those illegal acts.

**(iv)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant DAVID PIERRE is vicariously liable for each illegal act complained of herein, because an agency relationship existed between Defendant DAVID PIERRE and each telemarketing entity that placed, or caused to be placed, each telemarketing telephone call complained of herein.

**(v)**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendant DAVID PIERRE is vicariously liable for each illegal act complained of herein, because Defendant DAVID PIERRE had knowledge of each illegal act complained of herein, which would have led a reasonable person to investigate further.

. . .

. . .

. . .

-46-

# IX.

## **FIRST CLAIM FOR RELIEF**

### **(Defendants Violations of the TCPA, Delivery Restrictions, and TCA)**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through seventy-six as aforementioned.

**77.**    That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that (either individually or in concert with others, and either directly or indirectly) Defendants, and each of them, authorized, condoned, and ratified the initiation and transmission of each of the eleven (11) *unsolicited, illegal, and annoying telemarketing and solicitation telephone calls* in a period of less than one (1) year, and on behalf of the same entity in violation of, but not limited to 47 U.S.C. § 227(c)(5) as amended.

**78.**    That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that **not one** of the *unsolicited, illegal, and deceptive telemarketing and solicitation telephone calls*, to Plaintiff telephone number, was initiated for an emergency purpose, or was exempted by rule or order by the Commission under 47 U.S.C. § 227 et seq.

**79.**    That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that— under the FCC's amended regulations, *effective October 16, 2013*, the prior express written consent of the called party (the Plaintiff) **must [first] be obtained** before causing any telemarketing or solicitation telephone calls. See, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC Report and Order, CG Docket No. 02-278, ¶ 68 (Feb. 15, 2012) **("2012 Report and Order")**("Once our written consent rules become effective, however, an entity will no longer be able to rely on non-written forms of express consent to make...telemarketing calls, and thus could be liable for making such calls absent prior written consent.").

. . .

. . .

. . .

-47-

80.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that the FCC has defined what amounts to "prior express written consent"— specifically, *effective October 16, 2013*, "prior express written consent" will mean an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

81.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that (either individually or in concert with others, and either directly or indirectly)Defendants, and each of them, *completely failed to comply* with the mandates of 47 C.F.R. § 64.1200, that states, in pertinent part:

> (c) No person or entity shall initiate any telephone solicitation to:
>
> *        *        *
>
> (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

82.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that no Established Business Relationship **("EBR")** ever existed between the Plaintiff and any of the above-named Defendants, or Defendants' owners, co-owners, officers, directors, managers, members, employees, representatives, agents, and independent contractors.

83.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that (either individually or in concert with others, and either directly or indirectly) the acts and omissions of Defendants, and each of them, were not acted or omitted pursuant to 47 C.F.R. 64.1200(a)(1) & (2); 47 C.F.R. 64.1200(c)(2); 47 C.F.R. 64.1200(f)(2) (regarding "emergency purposes"); nor 47 C.F.R. 64.l200(f)(3) (regarding "established business relationships").

84.     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that Defendants, and each of them, ***completely failed***, when requested, to provide Plaintiff with Defendants' DO-NOT-CALL policy. 47 C.F.R. 64.1200(d)(1).

85.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that the foregoing despicable conduct, acts, and omissions of Defendants, and each of them, were undertaken *wantonly, willfully, knowingly, negligently, maliciously, intentionally* and in gross, reckless, and conscious disregard of the rights of the Plaintiff.

86.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that Plaintiff, for Defendants' failure to comply with the TCPA, is entitled to FIVE HUNDRED DOLLARS ($500.00) for each violation therein. 47 U.S.C. § 227(c)(5).

87.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that each of Defendants' eleven (11) *unsolicited, illegal, deceptive, and harassing telemarketing and solicitation telephone calls* to Plaintiff's landline telephone number is violative of, but not limited to the TCPA, 47 U.S.C. § 227(c)(5)— for which Plaintiff is entitled to statutory damages in the total amount of FIVE THOUSAND DOLLARS ($5,500.00).

88.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that— because each of Defendants' eleven (11) *unsolicited, illegal, deceptive, and harassing telemarketing and solicitation telephone calls* were initiated, and caused, *"willfully"*[19] or

---

[19]Albeit the TCPA does not define the term "willfully," in the "willfully or knowingly" standard set forth in Section 227(b)(3)(C)— Section 312, Title 47, of the U.S.C. defines "willful." There, "willful" is defined as the "conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter, or by a treaty ratified by the United States." Section 312(f)(1). Title 47, U.S.C. Also see the *Communications Act of 1934*, Section 151 et seq., Title 47, U.S.C., which is the Act the TCPA derived from. Hence, to establish a "willful" violation under the TCPA, for the award of treble damages, Plaintiff need not prove that Defendants knew it violated the law when it placed, or caused to be placed autodialed or pre-recorded calls to Plaintiff's wireless telephone— only that Defendants knew the calls were being placed - - and Defendants have admitted that they "knew the calls were being placed."

In *Bryan v. United States* (1998), 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197, the United States Supreme Court explained that "'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law. As Justice Jackson correctly observed, 'the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.' [*Boyce Motor Lines, Inc. v. United States* (1952), 342 U.S. 337, 345, 72 S.Ct. 329, 96 L.Ed. 367.] * * * Thus, unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." (Footnote omitted.) Id. at 193,

(continued...)

1  "*knowingly,*" *Plaintiff is entitled to treble damages* in the amount of SIXTEEN THOUSAND- FIVE

2  HUNDRED DOLLARS ($16,500.00). 47 U.S.C. § 227(c)(5).

3      **89.**     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains

4  that Plaintiff, for Defendants' failure to comply with 47 C.F.R. § 64.1200 et seq., is entitled to FIVE

5  HUNDRED DOLLARS ($500.00) for each violation therein. *See Robison v. 7PN, LLC*,

6  2:21-cv-00308-TC (D. Utah Nov. 1, 2021)*. Also see, Barrett v. Vivint, Inc.*, No.

7  2:19-cv-00568-DBB-CMR, 2020 WL 2558231, at *7 (D. Utah May 20, 2020)*; Charvat v. Ryan*, 168

8  Ohio App.3d 78, 2006-Ohio-3705; *Burdge v. Association Health Care Management, Inc.*, No.

9  08-3282, 2009 WL 414595, at *3 (S.D.Ohio Feb. 18, 2009).

10     **90.**     That Plaintiff alleges, claims, and maintains that each of Defendants' eleven (11)

11 *unsolicited, illegal, deceptive, and harassing telemarketing and solicitation telephone calls* to

12 Plaintiff were violative of 47 C.F.R. § 64.1200(c)(1) & (2), for which Plaintiff is entitled to statutory

13 damages in the total amount of FIVE THOUSAND DOLLARS ($5,500.00).

14     **91.**     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains

15 that— because the eleven (11) *unsolicited, illegal, and deceptive telemarketing and solicitation*

16 *telephone calls* to Plaintiff were initiated and placed, or caused to be initiated and placed "*willfully*"

17 or "*knowingly,*" and in violation of 47 C.F.R. 64.1200(c)(1) & (2), Plaintiff is entitled to *treble*

18 *damages* in the amount of SIXTEEN THOUSAND-FIVE HUNDRED DOLLARS ($16,500.00).

19 . . .

20 . . .

21

22

<hr>

[19](...continued)

23 118 S.Ct. 1939, 141 L.Ed.2d 197. Also see *United States v. Cohen* (C.A.2, 2001), 260 F.3d 68, 76
   (it matters only that defendant knowingly committed the deeds forbidden by statute, not that he

24 intended to violate the statute). Accordingly, for an award of treble damages under the TCPA, the
   term "knowingly" requires that liability be imposed even without Defendants' knowledge that the

25 conduct violated the statute. To establish a "knowing" violation of the TCPA, **for an award of**

26 **treble damages, Plaintiff must prove only that the Defendants knew of the facts that**
   **constituted the offense**. **Such knowledge of the "facts that constitute the offense" does not mean**

27 **that Defendants must know that certain conduct actually violates a law.** (emphasis added).

28

92.     That Plaintiff alleges, claims, and maintains that each of Defendants' eleven (11) *unsolicited, illegal, deceptive, and harassing telemarketing and solicitation telephone calls to Plaintiff* were violative of 47 C.F.R. § 64.1200(f)(2) & (3), for which Plaintiff is entitled to statutory damages in the total amount of FIVE THOUSAND-FIVE HUNDRED DOLLARS ($5,500.00).

93.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that— because the eleven (11) *unsolicited, illegal, and deceptive telemarketing and solicitation telephone calls* to Plaintiff were initiated and placed, or caused to be initiated and placed "*willfully*" or "*knowingly*," and in violation of 47 C.F.R. 64.1200(f)(2) & (3), Plaintiff is entitled to *treble damages* in the amount of SIXTEEN THOUSAND-FIVE HUNDRED DOLLARS ($16,500.00).

94.     That Plaintiff alleges, claims, and maintains that each of Defendants' eleven (11) *unsolicited, illegal, deceptive, and harassing telemarketing and solicitation telephone calls to Plaintiff*' were violative of 47 C.F.R. § 64.1200(d)(1), for which Plaintiff is entitled to statutory damages in the total amount of FIVE THOUSAND-FIVE HUNDRED DOLLARS ($5,500.00).

95.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that— because the eleven (11) *unsolicited, illegal, and annoying telemarketing and solicitation telephone calls* to Plaintiff were initiated and placed, or caused to be initiated and placed "*willfully*" or "*knowingly*," and in violation of 47 C.F.R. 64.1200(d)(1), Plaintiff is entitled to *treble damages* in the amount of SIXTEEN THOUSAND-FIVE HUNDRED DOLLARS ($16,500.00).

96.     As a result of the foregoing acts and omissions of each Defendant, and in order to punish each Defendant for their malicious conduct, as well as to deter each Defendant from committing similar acts in the future, Plaintiff is entitled to recover actual damages, punitive damages and exemplary damages from each Defendant, in an amount to be determined at trial.

. . .

. . .

. . .

## X.

### SECOND CLAIM FOR RELIEF

### (Defendants Violations of State Acts)

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through ninety-six as aforementioned.

97.     That at all times material and relevant hereto, Plaintiff asserts, alleges and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) are violative of Nevada Revised Statutes **("NRS")** including, but not limited to, NRS 598.0918(2), NRS 598.0923(3), NRS 598.0977, and NRS 599B.300, as amended, each of which, in-part, prohibits a businesses from engaging in "Deceptive Trade Practices."

98.     Plaintiff asserts, alleges, and maintains that— because Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) engaged in one (1) or more "deceptive practices," Plaintiff is entitled to recover, as an elderly person, any actual damages suffered, punitive damages, and if appropriate, reasonable attorney's fees.

> If an elderly...person suffers damage or injury as a result of a deceptive trade practice, he...may commence a civil action against any person who engaged in the practice to recover...punitive damages, if appropriate... . NRS 598.0977[20]

99.     That, at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) are, in pertinent part, violative of 598.0918(2), that in pertinent part states—

> NRS 598.0918 "Deceptive trade practice" defined. A person engages in a "deceptive trade practice" if, during a solicitation by telephone or sales presentation, he or she:
> *          *          *
> 2. Repeatedly or continuously conducts the solicitation or presentation in a manner that is considered by a reasonable person to be annoying, abusive or harassing;

Plaintiff contends that (either individually or in concert with others, and either directly or indirectly) the causing of eleven (11) *unsolicited, illegal telemarketing telephone calls* to Plaintiff, constitutes a pattern and practice of causing annoying, abusive, and harassing *unsolicited, illegal telemarketing and solicitation telephone calls.*

---

[20]**"Elderly person" defined.** "Elderly person" means a person who is 60 years of age or older. NRS 598.0933.

**100.** That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) are, in pertinent part, violative of 598.0923(3), that in pertinent part states—

NRS 598.0923 "Deceptive trade practice" defined. A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she knowingly:

\*     \*     \*

3. Violates a state or federal statute or regulation relating to the sale or lease of goods or services.

**101.** That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that Defendants, and each of them (either individually or in concert with others, and either directly or indirectly) are, in pertinent part, violative of 599B.300, that in pertinent part states—

NRS 599B.300 Civil action. If an elderly person...suffers damage or injury as a result of an unlawful solicitation by telephone, the elderly person...may commence a civil action against any person who engaged in the solicitation to recover the actual damages suffered by the elderly person...punitive damages, if appropriate, and reasonable attorney's fees....

**102.** As a result of the foregoing acts and omissions of each Defendant, and in order to punish each Defendant for their malicious conduct, as well as to deter each Defendant from committing similar acts in the future as part of their *illegal, deceptive and harassing* practices, Plaintiff is entitled to recover punitive damages and/or exemplary damages, from each Defendant, in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00)— to be determined at trial.

**XI.**

**THIRD CLAIM FOR RELIEF**

**Plaintiff Is Entitled to Damages
For Defendants' Invasion of Plaintiff's Privacy and
Intrusion into the Seclusion Expected by Plaintiff**

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and two as aforementioned.

**103.** That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that the invasion of Plaintiff's privacy, and intrusion into the seclusion expected by Plaintiff, are each actual [concrete] personal injuries entitling Plaintiff to damages.

**104.**     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that an invasion of privacy occurs when someone, such as Defendants, *unjustifiably intrudes, or causes the unjustifiable intrusion* into Plaintiff's privacy, and intrusion into the seclusion expected by Plaintiff.

**105.**     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that Defendants, and each of them (either individually, or in concert with others, and either directly, or indirectly) intentionally intruded, or were the causation of the intentional intrusion upon Plaintiff's right to be left alone, by initiating and/or causing the initiation of multiple *unsolicited and illegal telemarketing and solicitation telephone calls* to Plaintiff's residential telephone number.

**106.**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that each of the *unsolicited, illegal, and annoying telemarketing and solicitation telephone calls to Plaintiff*, and complained of herein, *created a civil tort* for Defendants' intentional invasion, or the causation of the intentional invasion *into Plaintiff's expectation of privacy and intrusion into the solitude and seclusion expected by Plaintiff in his home*. See *Los Angeles Lakers, Inc. v. Federal Insurance Co.*, 869 F.3d 795 (9th Cir. 2017), wherein the Court held that a claim under the Telephone Consumer Protection Act "is inherently an invasion of privacy claim," because Congress stated in that Act that "privacy rights" are the interests "this section is intended to protect." Id. at 803, 806 (quoting 47 U.S.C. § 227(b)(2)(B)(ii)(I), (C)).[21]

**107.**     That at all times relevant and material herein, Plaintiff asserts, alleges, and maintains that the Ninth Circuit found that TCPA claims are "implicit invasion-of-privacy claims." That Congress stated that the purpose of the TCPA is to protect individuals against invasions of privacy, concluding receiving unwanted calls falls within the tortious "intrusion upon the plaintiff's seclusion or solitude," also described as "the right to be let alone.

---

[21]*Also see, Van Patten v. Vertical Fitness Group, LLC*, No. 14-55980 (9th Cir. Jan. 30, 2017) (Unsolicited telemarketing phone calls, by their nature, invade the privacy and disturb the solitude of their recipients.); *Mims v. Arrow Fin. Servs., LLC*, 565    U.S. 368, 372 (2012) (Congress [has] also found that unregulated telemarketing was a "intrusive, " a "nuisance, " and "rightly regarded" as an "invasion of privacy.") (internal citations and quotation marks omitted); Restatement (Second) of Torts § 652A & § 652B (1977); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 06/19/2009); *Szefczek v. Beacon*, 286 N.J.Super. 247, 668 A.2d, 1099.

108.     That, for Defendants' causation of the intentional intrusion into Plaintiff's expectation of privacy and seclusion, Plaintiff seeks damages in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) in damages.

## XII.

### FOURTH CLAIM FOR RELIEF

### (Injunctive Relief)

Plaintiff repeats and realleges, and incorporates by reference paragraphs one through one hundred and eight as aforementioned.

109.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that 47 USC 227(c)(3) provides for injunctive relief (statutorily). Wherein it states:

(3) Private right of action

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

(A) **an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

**(emphasis added).**

110.     That at all times material and relevant hereto, Plaintiff asserts, alleges, and maintains that Plaintiff requests an Order enjoining Defendants, and each of them, from continuing their *unsolicited, illegal, deceptive and harassing telemarketing and solicitation telephone calls* without first complying with the Nevada Revised Statutes; the Telephone Consumer Protection Act; and the Rules and Regulations Implementing the TCPA.

. . .

. . .

. . .

# XIII.

## DEMAND FOR JURY TRIAL

Plaintiff repeats, realleges, and incorporates by reference paragraphs one through one hundred and ten as aforementioned.

**111.**   Please take notice that Plaintiff **DEMANDS TRIAL BY JURY** in this action.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against each Defendant, jointly and severally, as follows:

**(i)**   For Injunctive relief pursuant to 47 USC 227(c)(5);

**(ii)**   For each of Defendants' eleven (11) *unsolicited, illegal, deceptive, and harassing telemarketing and solicitation telephone calls to Plaintiff*, Plaintiff is entitled to statutory damages in the total amount of FIVE THOUSAND-FIVE HUNDRED DOLLARS ($5,500.00).

**(iii)**   Because each of Defendants' *unsolicited, illegal, deceptive, and harassing telemarketing and solicitation telephone calls, to Plaintiff* were initiated and caused "*willfully*" or "*knowingly,*" Plaintiff is entitled to *treble damages* in the amount of SIXTEEN THOUSAND-FIVE HUNDRED DOLLARS ($16,500.00). 47 U.S.C. § 227(c)(6).

**(iv)**   Because each of Defendants' eleven (11) *unsolicited, illegal, deceptive, and harassing telemarketing and solicitation telephone calls to Plaintiff* were violative of 47 C.F.R. § 64.1200(c)(1) & (2), Plaintiff is entitled to statutory damages in the total amount of FIVE THOUSAND-FIVE HUNDRED DOLLARS ($5,500.00).

**(v)**   Because the eleven (11) *unsolicited, illegal, and deceptive telemarketing and solicitation telephone calls* to Plaintiff were initiated and placed, or caused to be initiated and placed "*willfully*" or "*knowingly,*" and in violation of 47 C.F.R. 64.1200(c)(1) & (2), Plaintiff is entitled to *treble damages* in the amount of SIXTEEN THOUSAND-FIVE HUNDRED DOLLARS ($16,500.00).

**(vi).**   Because each of Defendants' eleven (11) *unsolicited, illegal, deceptive, and harassing telemarketing and solicitation telephone calls to Plaintiff* were violative of 47 C.F.R. § 64.1200(f)(2) & (3), Plaintiff is entitled to statutory damages in the total amount of FIVE THOUSAND-FIVE HUNDRED DOLLARS ($5,500.00).

(vii)    Because the eleven (11) *unsolicited, illegal, and annoying telemarketing and solicitation telephone calls* to Plaintiff were initiated and placed, or caused to be initiated and placed "*willfully*" or "*knowingly,*" and in violation of 47 C.F.R. 64.1200(f)(2) & (3), Plaintiff is entitled to *treble damages* in the amount of SIXTEEN THOUSAND-FIVE HUNDRED DOLLARS ($16,500.00).

(viii)    Because each of Defendants' eleven (11) unsolicited, *illegal, deceptive, and harassing telemarketing and solicitation telephone calls to Plaintiff* were violative of 47 C.F.R. § 64.1200(d)(1), Plaintiff is entitled to statutory damages in the total amount of FIVE THOUSAND-FIVE HUNDRED DOLLARS ($5,500.00).

(ix)    Because the eleven (11) *unsolicited, illegal, and harassing telemarketing and solicitation telephone calls* to Plaintiff were initiated and placed, or caused to be initiated and placed "*willfully*" or "*knowingly,*" and in violation of 47 C.F.R. 64.1200(d)(1), Plaintiff is entitled to *treble damages* in the amount of SIXTEEN THOUSAND-FIVE HUNDRED DOLLARS ($16,500.00).

(x)    That, for Defendants' violations of Nevada state laws, Defendants to pay Plaintiff damages in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00)— to be determined at trial;

(xi)    That, for Defendants Invasion of Plaintiff's Privacy and Intrusion Into the Seclusion Expected by Plaintiff, Defendants to pay Plaintiff damages in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00)— to be determined at trial;

(xii)    For Plaintiff's fees and costs;

(xiii)    For such other and further relief as this Court deems just and proper.

DATED this 20th day of January 2022.

PAUL D.S. EDWARDS,

/s/ Paul D.S. Edwards

Paul D.S. Edwards
713 Wheat Ridge Lane, Unit 203,
Las Vegas, NV 89145
Landline Telephone:   702.341.1776
Cellular Telephone:   702.893.1776
Email:   pauldse@pauldsedwards.com
Plaintiff *pro se*