UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Paul Edwards,

        Plaintiff

 v.

Signify Health, Inc., et al.,

        Defendants

Case No. 2:22-cv-00095-CDS-BNW

**Order Granting Defendants' Motion to Dismiss and Denying Plaintiff's Appeal of the Magistrate Judge's Order**

[ECF Nos. 13, 35]

      Pro se plaintiff Paul Edwards brings this Telephone Consumer Protection Act of 1991 (TCPA) lawsuit against various corporate and individual defendants for phone calls made to his residential landline over the span of three and a half years. The defendants move to dismiss the complaint on the basis that each phone call was made on behalf of Edwards's own Medicare provider to schedule a free medical exam, rather than with the intent to telemarket any good or service. In response, Edwards speculates that the defendants called under the guise of offering free medical services but that the calls actually had more nefarious purposes. Because Edwards fails to state an actionable claim against any of the defendants, I grant their motion to dismiss (ECF No. 13) and dismiss Edwards's complaint without prejudice but with leave to amend, if Edwards can cure the identified deficiencies herein. Edwards also appeals the order issued by United States Magistrate Judge Brenda Weksler (ECF No. 34), in which she stayed discovery pending the resolution of this motion to dismiss. Because Judge Weksler was correct to recognize that "a district court may stay discovery when it is convinced that the plaintiff will be unable to state a claim upon which relief can be granted," I deny Edwards's appeal and affirm Judge Weksler's order in full.

I.      Background

Edwards commenced this action against defendants Signify Health; Cure Topco, LLC; Bradford Kyle Armbrester (CEO of Signify Health); Steven Senneff (CFO of Signify Health); and David Pierre (COO of Signify Health) for alleged violations of the TCPA, Nevada law, and an alleged "intentional invasion into [his] expectation of privacy and intrusion into the solitude and seclusion expected by [him] in his home." Compl., ECF No. 2 at 2. The basis of Edwards's complaint is that defendants are responsible for a series of harassing telemarketing phone calls placed to his home phone number. *Id.* at 3. It is unclear from the face of Edwards's complaint exactly how he alleges that the corporate-suite executives of Signify Health are individually responsible for the phone calls he received, but he alleges that each executive had the ability to control Signify Health's telemarking campaigns and failed to ensure that those campaigns accorded with the TCPA. *Id.* at 14–22.

Edwards asserts that Signify Health called him eleven times. *Id.* at 28. He describes each phone call in detail and notes that he "record[s] his conversations"; he alleges that the first call occurred on April 16, 2018. *Id.* at 29. The caller identification system on Edwards's phone recognized the call as originating from Humana, a nonparty health insurance company. *Id.* Edwards's transcript of the conversation states that the caller identified herself as a representative of Signify Health and asked to speak to him about an "in-home health and well-being [assessment]."[1] *Id.* He responded that he was "really not interested." *Id.* When asked why he declined their service, he stated, "I have no need for it. Not interested. Don't care." *Id.* The call ended shortly thereafter. *Id.* He received a second phone call from Humana on April 2, 2019, which resulted in a substantively identical conversation. *Id.* at 30. He received a third and fourth phone call from Humana on October 9, 2020, and October 17, 2020, neither of which he answered. *Id.* at 31, 33. He received a fifth phone call from Humana on October 29, 2020, which

---

[1] Edwards transcribes this word as "incessant," but based upon the transcripts of the other phone calls as well as the context of the sentence, it is clear that the caller said, "assessment."

he picked up. *Id.* at 33. The caller stated that they were calling from Humana and wanted to schedule in-home medical testing. *Id.* Edwards alleges that he told them to stop calling and hung up. *Id.*[2] Humana called a sixth time on March 3, 2021, but Edwards did not answer. *Id.* Edwards received a seventh phone call from somebody identifying themselves as Courtney from Signify Health on March 4, 2021, regarding the "in-home health visit." *Id.* at 34. He alleges that he "told them to put [him] on a 'do not call' list" and to "tell who[m]ever owns [her] company, [that he] will see them in court." *Id.* The caller then "hangs[] up laughing." *Id.*

Edwards received an eighth phone call from a number with the Humana caller ID on March 10, 2021, which he did not answer. *Id.* at 35. The caller did not leave a voicemail message. *Id.* He received a ninth phone call on March 11, 2021, and the caller identified themselves as Rebecca from Signify Health. *Id.* at 36. Rebecca attempted to "schedule an in-home health visit" with Edwards, but he cut her off to inform her that he planned to sue her employer for federal and state law violations. *Id.* She responded that she worked for Humana; Edwards "did not care" and the call ended shortly thereafter. *Id.* He received a tenth phone call on September 28, 2021, which he did not answer, and again, he received no voicemail message. *Id.* at 37. He received the final, eleventh phone call on October 1, 2021, from Kacer at Signify Health. *Id.* at 38. She wanted

---

[2] Defendants note that Edwards only transcribes part of each phone call, Mot. Dismiss, ECF No. 13 at 4 n.2. They attach the full transcripts of the calls for which they have records to their motion to dismiss, and I review those transcripts without converting this motion to dismiss into a motion for summary judgment based on the incorporation-by-reference doctrine.

The "[i]ncorporation-by-reference [doctrine] is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citation omitted). A defendant "may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). Edwards quotes transcripts of the phone calls in his complaint, but frequently uses ellipses and abbreviated sentences to omit the portions of those very documents that weaken his claims. *Compare, e.g.*, ECF No. 2 at 32–33 (Edwards' description of the October 29, 2020, phone call states only that the telemarketer wanted to schedule an in-home medical testing and he alleges that he advises the caller that he told defendants not to call him) *with* ECF No. 13-2 at 3 (full transcript of the same phone call states that the home testing was free, offered to Edwards as part of his benefits package for being a Humana member, and that Edwards never mentions or requests not to be called by defendants on this date).

to talk "about an in-home health visit." *Id.* He responded that he told them that he did not want to be called again. *Id.* She stated, "let me check," and then said that Edwards was on the "Do Not Call list." *Id.* Edwards replied, "thank you," and the call ended. *Id.*

Edwards now sues defendants for (1) violations of the TCPA, (2) state-law violations of Nevada's Deceptive Trade Practices Act, and (3) invasion of Edwards's privacy. ECF No. 2. He requests $500 in monetary relief per phone call, an amount that is trebled under the TCPA, to equal $16,500 in total sought relief. *Id.* at 51.

## II.     Legal standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, courts accept all allegations of material fact as true and construe the pleadings in the light most favorable to the non-movant. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, courts need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Finally, dismissal can be "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

## III.     Discussion

### a.   Edwards's TCPA claims must be dismissed.

Put simply, Edwards fails to state a plausible claim because the defendants' phone calls offered him a free healthcare service and thus were not made for the purpose of telemarketing or

soliciting the purchase, rental of, or investment in property, goods, or services. Congress enacted the TCPA "to protect the privacy interests of telephone subscribers." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). The TCPA provisions at issue here concern "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). However, the TCPA restricts only the use of "any telephone facsimile machine, computer, or other device to send . . . an **unsolicited advertisement**[.]" *Id.* § 227(b)(1)(C) (emphasis added). "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." *Id.* § 227(a)(5). As described in the implementing regulation, "telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

   A number of other courts have similarly found that plaintiffs failed to state plausible TCPA claims when they were merely offered free services, as such offers do not constitute unsolicited advertisement or telemarketing. *See, e.g., Daniel v. Five Stars Loyalty, Inc.*, 2015 WL 7454260, at *5–6 (N.D. Cal. Nov. 24, 2015) (granting dismissal of plaintiff's TCPA claims based on a text message stating, "Welcome to Five Stars, the rewards program of Flame Broiler. Reply with your email to finish registering and get free pts! Text STOP to unsubscribe."); *Morris v. Unitedhealthcare Ins. Co.*, 2016 WL 7115973 (E.D. Tex. Nov. 9, 2016) (recommending summary judgment be granted on plaintiff's TCPA claims because defendant offered "in-home medical examination . . . to members who already have coverage for [] no-additional-cost benefit through a qualified plan"); *Trujillo v. Free Energy Savs. Co., LLC*, 2020 WL 7768722 (C.D. Cal. Dec. 21, 2020) (granting summary judgment on plaintiff's TCPA claims because text messages offering free weatherization services were not telephonic solicitations).

Defendants point out that even if an offer for free services *could* constitute an unsolicited advertisement or telemarketing, the TCPA's implementing regulations exempt such offers when made by health care entities. ECF No. 13 at 13. Specifically, "no person or entity may . . . initiate any telephone call to any residential line . . . to deliver a message without the prior express written consent of the called party," 47 C.F.R. § 64.1200(a)(3), "unless the call . . . delivers a 'health care message' made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA Privacy Rule, 45 C.F.R. § 160.103." *Id.* § 64.1200(a)(3)(v). A covered entity means "a health plan[,] a health care clearinghouse[,] or a health care provider who transmits any health information in electronic form in connection with a transaction covered" by the statute." 45 C.F.R. § 160.103. Indeed, the Federal Communications Commission (FCC) "has provided examples of calls that it regards as predominantly healthcare[] related. Such calls include 'appointment and exam confirmations and reminders, **wellness checkups**, . . . prescription notifications, and home healthcare instructions,' but exclude healthcare related calls that 'include telemarketing, solicitation, or advertising content.'" *Dorfman v. Albertsons, LLC*, 2019 WL 5873448, at *3 (D. Idaho Feb. 12, 2019) (citing Regs. TCPA 1991, 30 F.C.C. Rcd. 7961, 8031 ¶ 146 (July 10, 2015)) (emphasis added). It is clear from the purpose of the transcribed phone calls that the callers' intent was to schedule a free medical check-up for which Edwards may have been entitled under his health care plan. Edwards does not provide any plausible allegation that the phone calls had some ulterior motive or purpose to solicit goods or services for which he would have had to pay. The bulk of his opposition to defendants' motion is hypothetical and speculative. *See, e.g.*, ECF No. 17 at 6–7 ("[U]ntil discovery is completed, the true purpose of each call to plaintiff remains a question . . . how are Defendants earning millions of dollars from a supposedly 'no cost' (free) service? . . . Plaintiff knows, from common experience, that 'free' / 'no cost' offers often come with strings attached."). He states that "it stands to reason that . . . during the in-home medical service, the licensed physician . . . conducting the in-home service could offer additional services or products for a fee[.]" *Id.* at 7. But what Edwards

6

hypothesizes could have happened is not a basis for a lawsuit, nor does his speculation give rise to an inference that defendants' phone calls had an ulterior purpose beyond provision of free in-home medical services. Consequently, Edwards fails to state a claim under the TCPA.

      b.   *Edwards's state law claims must also be dismissed.*

Edwards alleges that the eleven phone calls constitute deceptive trade practices and violate Nevada Revised Statutes (NRS) §§ 598.0918(2) and 598.0923(3). ECF No. 2 at 52. The former states that a person engages in a deceptive trade practice if, "during a solicitation by telephone or text message . . . he or she repeatedly or continuously conducts the solicitation or presentation in a manner that is considered by a reasonable person to be annoying, abuse[,] or harassing." NRS § 598.0918(2). However, for the reasons described *supra* subsection *a*, Edwards fails to plausibly claim that defendants were engaged in a "solicitation" by telephone. Because they did not solicit to Edwards, he does not plausibly plead that they violated NRS § 598.0918(2).

Edwards also claims that defendants violated NRS § 598.0923(3). ECF No. 2 at 52. As far as this court can discern, no subsection (3) of that statute exists. Presumably Edwards intended to bring this claim under NRS § 598.0923(1)(c), which states that a person engages in a deceptive trade practice when they "violate a state or federal statute or regulation relating to the sale or lease of goods or services." NRS § 598.0923(1)(c). Because Edwards is a pro se litigant, I must construe his complaint liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.") (cleaned up). So I construe Edwards's claim as one brought under NRS § 598.0923(1)(c), but for the same reasons described *supra* subsection *a*, Edwards fails to plausibly allege any violation of a federal statute or regulation. Because he has not done so, he does not plead that the defendants violated this statute.

      c.   *Edwards's tort claim for invasion of privacy must be dismissed.*

Finally, Edwards brings a claim based on defendants' invasion of his privacy. ECF No. 2 at 53–54. "The tort of invasion of privacy embraces four different tort actions," and of relevance

here is the action regarding "unreasonable intrusion upon the seclusion of another[.]" *Franchise Tax Bd. of St. of Cal. v. Hyatt*, 407 P.3d 717, 733 (Nev. 2017), *rev'd on other grounds sub nom. by Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485 (2019). Intrusion upon seclusion is a tort grounded in a plaintiff's objective expectation of privacy. *Id.* at 734 (citing *PETA v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1279 (Nev. 1995), *overruled on other grounds by City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 940 P.2d 134, 138 (Nev. 1997)). "To recover for the tort of intrusion, a plaintiff must prove the following elements: (1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person." *Pittman v. J.J. MacIntyre Co. of Nev., Inc.*, 969 F. Supp. 609, 613–14 (D. Nev. 1997) (citing *Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1447–48 (D. Nev. 1994)). Nevada courts consider the following factors in deciding whether a particular action is highly offensive: "the degree of intrusion, the context, conduct[,] and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Kuhn*, 865 F. Supp. at 1449.

Eleven phone calls made between April 2018 and October 2021, each of which had the aim of offering a free in-home service to the plaintiff through his Medicare provider, do not constitute something "highly offensive to a reasonable person." *See, e.g., Wellesley v. Chief Fin. Officer*, 2010 WL 2926162, at *3 (D. Nev. July 20, 2010) (dismissing after finding that the allegation that defendants called plaintiff up to "twelve times a day" was insufficient to support a finding of offensiveness). The degree of intrusion here—minutes, at most, of Edwards's day on sporadic occasions spanning three-and-a-half years—marshals against such a finding, as do the context and circumstances surrounding the phone calls. Consequently, Edwards fails to state a claim for invasion of privacy.

## IV. Conclusion

IT IS HEREBY ORDERED that defendants' motion to dismiss [ECF No. 13] is **GRANTED**. Plaintiff Paul Edwards's complaint is dismissed without prejudice and with leave

8

to amend. If Edwards chooses to file an amended complaint, he must do so by June 13, 2023, and must title it First Amended Complaint. If he fails to file a first-amended complaint by that date, this case will be closed without further notice.

    IT IS FURTHER ORDERED that Edwards's appeal [ECF No. 35] of Judge Weksler's order is DENIED, and Judge Weksler's order [ECF No. 34] is AFFIRMED in full.

    DATED: May 12, 2023

_____
Cristina D. Silva
United States District Judge